UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **REPORT, RECOMMENDATION**
                                             **and ORDER**
v.

FRANK R. PARLATO, JR.,                       15-CR-149(FPG)(JJM)
CHITRA SELVARAJ,

                        Defendants.
_____

        Defendants are charged in a nineteen-count Indictment [1][1] with conspiring to defraud the United States by impeding the lawful functions of the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. §371 (id., Count 1), corrupt interference with the administration of the internal revenue laws, in violation of 26 U.S.C. §7212(a) and 18 U.S.C. §2 (id., Count 2), six counts of wire fraud, in violation of 18 U.S.C. §§1343 and 2 (id., Counts 3 -9), conspiracy to commit wire fraud, in violation of 18 U.S.C. §1349 (id., Count 10), and nine counts of money laundering, in violation of 18 U.S.C. §§1957 and 2 (id., Counts 11-19).[2]  Before me are defendants' omnibus pretrial motion [25] and the government's cross-motion for reciprocal discovery.  Government's Response [38], pp. 36-37.  Oral argument was held on January 5, 2017 [48], and thereafter the parties filed  additional submissions [50, 54, 55].

        For the following reasons, the government's cross-motion for reciprocal discovery is granted, and defendants' non-dispositive motions are granted in part and denied in part. Furthermore, I recommend that defendants' motions to dismiss the Indictment be denied.

---

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      The Indictment also contains two forfeiture allegations.

**BACKGOUND**

All of the counts of the Indictment [1] center on defendant Frank R. Parlato Jr.'s alleged ownership interest in several entities that owned and operated real property located at 360 Rainbow Boulevard in Niagara Falls (the "One Niagara Building"), including its "master tenant", Tourist Services, LLC ("Tourist Services").  Id., pp. 2-4, ¶¶3-5.  Defendant Chitra Selvaraj was the alleged chief financial officer of Tourist Services, an entity owned by defendant Parlato and L.R.[3] pursuant to an Operating Agreement that required defendant Parlato, on behalf of Tourist Services, to make certain distributions to L.R. and RH Niagara Building, LLC, an entity owned by L.R.  Id., p. 3, ¶4;  p. 5, ¶8.

Since in or about mid-2006 defendants allegedly obtained revenue from the operations of the One Niagara Building and took steps to conceal that revenue from the Internal Revenue Service, and those with an interest in the One Niagara Building, including  L.R., RH Niagara Building, LLC, C.B. and S.B..  Id., p. 5, ¶9; p. 20,¶¶2-3.  Defendants allegedly deposited the cash proceeds generated into ATMs that they controlled and into 50 bank accounts, many in the name of shell entities,  to obfuscate the source and ownership of that money .  Id., pp. 5-8, ¶¶10-14.

**ANALYSIS**

**A.      Defendants' Omnibus Motion**

**1.      Motion for Disclosure of Grand Jury Minutes and to Dismiss Based On Misconduct in Presentation to the Grand Jury**

Defendants' motion for disclosure of the grand jury minutes and for dismissal of the Indictment arises primarily from alleged inaccuracies and falsehoods contained in the August

---

[3]      Although defendants identify the individuals by name, I have used their initials to preserve any confidentiality concerns.

27, 2015 Affidavit of FBI Special Agent ("SA") Brian Burns, which was submitted in support of

an application [61] that was granted by Magistrate Judge H. Kenneth Schroeder, Jr. for a seizure

warrant for the three bank accounts that are the subject of the forfeiture allegations of the

Indictment. Cambria, *et al.* Affidavit [25], ¶¶9(a)-(gg)).[4]  At oral argument, defendants also

pointed to the January 8, 2008 Letter of Intent between defendant Parlato and S.B. and C.B. as an

additional basis for their motion.[5]

       While "grand jury proceedings are subject to strict secrecy requirements" United

States v. R. Enterprises, Inc., 498 U.S. 292, 299 (1991), that secrecy is not absolute. Fed. R.

Crim. P. ("Rule") 6(e)(3)(E)(ii) permits disclosure of grand jury proceedings "at the request of a

defendant who shows that a ground may exist to dismiss the indictment because of a matter that

occurred before the grand jury".[6]  Therefore, "the standard for dismissing an indictment is

relevant to the standard for disclosure of grand jury materials". United States v. Way, 2015 WL

8780540, at *4 (E.D. Cal. 2015).  Importantly, "an indictment valid on its face is not subject to

challenge on the ground that the grand jury acted on the basis of inadequate or incompetent

evidence." United States v. Calandra, 414 U.S. 338, 345 (1974). However, courts may "dismiss

an indictment because of misconduct before the grand jury, at least where that misconduct

---

[4]     Defendants' motion is supported by an affirmation from Gregory Photiadis, Esq., L.R's attorney, a declaration from Paul Grenga, Esq., a grand jury witness and defendant Parlato's former attorney, as well as various agreements, court decisions and transcripts related to civil suits involving defendant Parlato, and banking records [41-1] – [41-24].

[5]     Because this argument was raised for the first time at oral argument, I permitted defendants to make a supplemental submission concerning it [50] and the government to respond [56]. *See* January 6, 2017 Text Order [49]. Defendant Parlato has since moved for leave to file a reply to the government's response to defendants' supplemental submission [57]. The government opposes that motion [58]. For the reasons set forth below, defendant Parlato's motion is denied.

[6]     Defendants' motion is brought pursuant to Rule 6(e)(3)(C)(i) - a non-existent Rule. Cambria*, et al*. Affidavit [25], ¶10. However, at oral argument defendants' counsel corrected that error by relying on Rule 6(e)(3)(E)(ii).  Oral argument transcript [51], p. 13.

amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions". United States v. Williams, 504 U.S. 36, 46 (1992). Among those rules are "[18 U.S.C.] §1623 (criminalizing false declarations before grand jury) . . . [and] §1622 (criminalizing subornation of perjury)". Id., 46 n. 6. *See also* United States v. Hogan, 712 F.2d 757, 759 (2d Cir. 1983) ("[d]ue process considerations prohibit the government from obtaining an indictment based on known perjured testimony").[7]

Since "a presumption of regularity attaches to grand jury proceedings" United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994), defendants have the "burden of asserting that *particularized and factually based grounds* exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment". United States v. Abcasis, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992) (emphasis added). *See also* United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990), abrogated on other grounds by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010) (disclosure "is rarely permitted without specific factual allegations of government misconduct"); Leung, 40 F.3d at 582 ("[a] review of grand jury minutes should not be permitted without concrete allegations of Government misconduct").

This standard is "'demanding.'" United States v. Hernandez, 2015 WL 738697, *1 (D. Colo. 2015). The "strong presumption of regularity in grand jury proceedings . . . . cannot be outweighed by conclusory or speculative allegations of misconduct". United States v. Morgan, 845 F. Supp. 934, 941 (D. Conn. 1994), aff'd, 51 F.3d 1105 (2d Cir. 1995). *See* United States v. Sandford, 2016 WL 791435, *4 (W.D.N.Y.), adopted, 2016 WL 3951217 (W.D.N.Y.

---

[7]     "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001).

2016) ("[u]nspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden").

Given this demanding standard, which applies equally to requests for *in camera* inspections of grand jury materials,[8] "[d]isclosure . . . will be denied in all but extraordinary circumstances". Morgan, 845 F. Supp. at 941. *See* Abcasis, 785 F. Supp. at 1119 ("motions to inspect grand jury minutes should be granted sparingly"); United States v. Castiglia, 1987 WL 30591, *1 (W.D.N.Y. 1987) ("[d]isclosure of grand jury minutes is extraordinary relief"). With these considerations in mind, I will address each of defendants' arguments.

### a.  SA Burns' Affidavit

Relying on more than 30 examples of alleged falsehoods and inaccuracies contained in  SA Burns' 154 paragraph Affidavit [61]  (Cambria, *et al.* Affidavit [25], ¶¶9(a)-(gg)),  defendants allege that there is a "likelihood is that these inaccuracies were spread before the grand jury", and that the government was "aware of the true and accurate facts". Id., ¶¶8, 11. Arguing that these allegations, if substantiated, would require dismissal of the Indictment, they seek disclosure of the grand jury transcripts or, alternatively, for me to conduct an *in camera* review.  Id., ¶13.   The government responds that the motion is based upon speculation as to what was presented to the grand jury, but that in any event,  the alleged inaccuracies and falsehoods are "merely disputes about the defendants' view of  grammar, semantics, the

---

[8]      *See* United States v. Vaughan,  2010 WL 3025648, *3 (S.D.N.Y. 2010); United States v. Laster, 2007 WL 3070599, *1 (S.D.N.Y. 2007), aff'd, 313 Fed. App'x 369 (2d Cir. 2009) (Summary Order).

interpretation of underlying facts, and the sufficiency of the evidence" - all of which are issues to be resolved at trial.  Government's Sur-Reply [55], pp. 1-2. [9]

Defendants' motion falls short of meeting the demanding standard for disclosure of the grand jury transcripts.  Initially, defendants' motion is premised entirely on the speculative assumption that everything that was contained in SA Burns' Affidavit in support of the seizure affidavit was put before the grand jury.  Fatally lacking is any evidence of what actually transpired before the grand jury.  See United States v. Curious Goods, L.L.C., 2014 WL 345235, *11–12 (W.D. La. 2014) ("Stanford  . . . speculates as to what DeSalvo's testimony to the Grand Jury could have been, however, he makes no specific allegations of misconduct").

In any event, even assuming that SA Burns' grand testimony parroted his affidavit in support of the seizure warrant, his statements fail to demonstrate a basis for disclosure of the grand jury transcript or dismissal of the Indictment.   The laundry list of alleged inaccuracies and falsehoods relied upon by defendants fall into one or more of the following categories – none of which are sufficient to warrant disclosure or dismissal of the Indictment.

The first category is comprised of alleged inaccuracies and falsehoods that result from defendants misreading of SA Burns' Affidavit.   For example, defendants contend that paragraph 6 of SA Burns' Affidavit falsely states that that L.R. and the IRS were civil litigants against defendant Parlato.  Cambria Reply Declaration [41], ¶¶6(a), (c).  However, that paragraph demonstrates that they were instead referenced by SA Burns as being actual or potential creditors of defendant Parlato.  See Burns Affidavit [61],¶ 6 (defendant Parlato was "shielding . . . monies from potential and actual creditors, including civil litigants, LR, DH and

---

[9]        Defendants' motion for disclosure of the grand jury transcripts and for dismissal of the Indictment based upon the alleged inaccuracies and falsehoods contained in SA Burns' Affidavit was initially not supported by any evidence.  Since supporting evidence was only offered in their reply (Cambria Reply Declaration [41]), I permitted the government to address defendants' reliance on that evidence. Government's Sur-Reply [55].

the IRS").  Other instances of alleged inaccuracies and falsehoods in SA Burns' Affidavit

(Cambria Reply Affidavit [41], ¶¶9(g), (v)) likewise fail because they remain unsupported by

any evidence. *See* United States v. Burford, 755 F. Supp. 607, 614 (S.D.N.Y. 1991) ("[b]efore a

court will disrupt the traditional secrecy surrounding grand jury proceeding[s], a defendant must

show evidence of an irregularity and not merely make a statement on information and belief").

     The second category of alleged inaccuracies and falsehoods consist of those

statements from SA Burns that turn on semantics or otherwise constitute "[s]imple inaccuracies",

which do "not rise to the level of perjury". Monteleone, 257 F.3d at 219.   For example:

     - - defendants argue (Cambria Reply Declaration [41], ¶6(f)) that SA Burns

mispresented that "LR *invested* $2,200,000 . . . in a project" (Burns Affidavit [61], ¶10

(emphasis added), when in fact he held a mortgage – a type of investment. *See* Stuck v. Schumm,

290 Mass. 159, 165 (1935) (" real estate mortgages [are] types of investment where ordinarily

moneys are allowed to stay for some length of time");

     - - whereas SA Burns stated that "DH held the first mortgage/lien against the

project" (Burns Affidavit [61], ¶10), that mortgage was held against the property, rather than the

project.  Cambria Reply Declaration [41], ¶ 6(dd); and

     - -  defendants contend that SA Burns' Affidavit erroneously stated that

defendant Parlato was the "landlord in the lease agreement [between One Niagara, LLC] and

Tourist Services". Cambria Reply Declaration [41], ¶6(cc).  However, as explained by SA Burns,

the characterization of defendant Parlato as being the landlord arose from the fact that he held a

controlling interest in One Niagara, LLC, the lessor.  Burns Affidavit [61], ¶17.

     The third category of alleged inaccuracies and falsehoods consists of statements

for which defendants offer their own explanation for their undisputed conduct.  Such challenges

to the competence or reliability of the statements contained in SA Burns' Affidavit fails to meet the standard for disclosure of the grand jury transcript or dismissal of the Indictment. *See* Calandra, 414 U.S. at 345; United States v. Jones, 164 F.3d 620, *2 (2d Cir. 1998) (Summary Order) ("[a] defendant's complaint that a government agent gave the grand jury misleading testimony - including an inaccurate summary of evidence -is in essence a challenge to the reliability or competence of the evidence and, absent other prosecutorial misconduct, will not support dismissal of an indictment"); United States v. Goff, 2016 WL 3264129, *3 (S.D.N.Y. 2016) ("[t]he Supreme Court has instructed that a district court should not quash an indictment based upon the sufficiency of the evidence presented to the grand jury or a complaint that a prosecutor's presentation was incomplete or misleading").   For example:

- - SA Burns states that there was no legitimate business purpose to the 17 entities and 49 bank accounts created and utilized by defendant Parlato (Burns Affidavit [61], ¶6). Defendants do not dispute the creation of these accounts and entities, but rather explain it as being a method of asset protection implemented at the direction of Mr. Grenga, defendant Parlato's counsel (Grenga Declaration [41-2], ¶3(a));[10] and

- - defendants do not dispute that defendant Parlato "diverted significant revenues generated from the operations of the [One Niagara Building]" as stated by SA Burns (Burns Affidavit [61], ¶13), but contend that he could do so under the One Niagara Operating Agreement, which afforded him the ability to manage One Niagara, LLC, without limitation. Cambria Reply Declaration [41], ¶6(j).

---

[10]     Supportive of the absence of any misconduct in the grand jury presentment, defendants acknowledge that their theory for why the various entities and bank accounts were created by defendant Partlato was presented to the grand jury through Mr. Grenga's testimony.  Cambria Reply Declaration [41], ¶6(d).  Moreover, several of the documents defendants rely upon as evidence of SA Burns' inaccuracies and falsehoods were presented to the grand jury as exhibits for its consideration.  *See* [41-3], p. 4 of 7; [41-6], p. 2 of 8; [41-9], p. 2 of 23; [41-19], p. 2 of 7; [41-21], p. 5 of 13.

The particularized need  standard "would be rendered meaningless and the long established policy of secrecy surrounding grand jury presentations would be destroyed if a defendant could obtain minutes merely by contending that not every fact or explanation that he deems appropriate may have been revealed to the grand jury." Castiglia, 1987 WL 30591, *1. *See also* United States v. Bailey, 2016 WL 6995067, *39 (W.D.N.Y. 2016)[11] ("Bailey's motion for grand jury disclosure primarily reiterates the arguments he raised in connection with his motion for a Franks hearing - that he disagreed with the interpretations made by members of law enforcement in the various affidavits submitted in connection with this investigation. Bailey's disagreement with those interpretations is no more a basis to overcome the presumption of grand jury secrecy than it is to justify a Franks hearing or dismissal of the indictment"). Therefore, I recommend that this portion of defendants' motion be denied. [12]

### b.    Letter of Intent

The Indictment alleges that during 2008 defendant Parlato "entered into an agreement with C.B. and S.B." under which he received $1 million for services to be provided, and then attempted to "conceal and disguise" the source and nature of those funds by reporting the funds to the IRS as a loan.  Indictment [1], p. 2, ¶2.  It is also alleges that C.B. and S.B. had an interest in the One Niagara Building.  Id., p. 20, ¶2.

---

[11]      The objections to this Report and Recommendation (15-CR-6082) are pending before Judge Geraci.

[12]      Even if defendants could prevail in establishing a particularized need,  the disclosure must be "structured to cover only material so needed". Douglas Oil, 441 U.S. at 222. *See* United States v. Aisenberg, 358 F.3d 1327, 1349 (11th Cir. 2004) ("[e]ven when persons requesting disclosure have carried the burden of showing that they have a compelling and particular need for the grand jury material in order to avoid an injustice and that their need for disclosure outweighs the secrecy need, access is limited and covers only those materials actually needed").  Since  defendants' motion does not extend beyond SA Burns' statements, any disclosure would be limited to his testimony.

These allegations appear to be based, at least in part,  on the Letter of Intent dated January 8, 2008, a grand jury exhibit. [54], pp. 17-18 of 26.  It states that upon the agreement's execution, C.B. and S.B., as managing members of two entities, would pay defendant Parlato a $1 million advance on his compensation for his work for those entities, and to secure the repayment of that advance, C.B. and S.B. would have a lien on the One Niagara Building.  Id. Although the Letter of Intent is signed by defendant Parlato, it is unsigned by either C.B. or S.B. Id.  Based on the absence of a fully executed agreement, defendants argue that the government misled the grand jury that the Letter of Intent conferred legal rights to  C.B. and S.B. in the One Niagara Building.  Defendants' Supplemental Submission [50], ¶5.

In response, the government argues that the defendants fail to offer any evidence that the grand jury was misled as to the property rights conferred by the Letter of Intent. Government's Response to defendant's Supplemental Submission [54], p. 5.  While the government relies upon quoted portions of the grand jury testimony[13] to demonstrate that the grand jury was not misled as to the Letter of Intent (id., pp. 2, 6-9), I have not considered those materials, given that the Letter of Intent and allegations of the Indictment sufficiently demonstrate that there was no attempt to mislead the grand jury.[14]

---

[13]      The government explains that it disclosed portions of the grand jury testimony concerning the Letter of Intent in response to defendants' Supplemental Submission [50] because it may be considered exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83 (1963) in support of any defense that that the Letter of Intent did not confer property rights in the One Niagara Building to C.B. and S.B. Government's Response to defendants' Supplemental Submission [54], p. 2.

[14]      Defendant Parlato's motion for leave to file a reply [57] argues, inter alia, that he has not been provided with the actual transcripts relied upon by the government. Id., p. 2.  Since I have not considered the government's recitation of the grand jury testimony or its associated arguments in deciding the motion, that argument provides no basis for granting defendant Parlato leave to file a reply.  Granting or denying "[l]eave to file a reply is within the discretion of th[e] Court".  Gillespie v. United States, 2009 WL 2488061, at *7 (W.D. Mich. 2009).  Having considered the additional arguments raised by defendant Parlato in support of his motion for leave to file a reply [57], I conclude that any further briefing by defendant Parlato would be fruitless.

As argued by the government, it is undisputed that the correct version of the Letter of Intent bearing one signature was presented to the grand jury and that the Indictment accurately alleges that defendant Parlato "entered into an agreement",  which does not always require a fully executed writing to be enforceable.  Government's Response to defendant's Supplemental Submission [54], pp. 5, 9-10.   For example, if the Letter of Intent is subject to New York's statute of frauds, "[i]t is inconsequential that there is no written agreement  . . .  that is signed by *both* parties, because New York's statute of frauds requires only that the relevant writing be 'subscribed [to] *by the party to be charged*'".  Vertex Capital Corp. v. V-Formation, Inc., 2002 WL 31011878,  *3 n. 8 (S.D.N.Y.  2002) (*quoting*  N.Y. General Obligations Law § 5–701(a)) (emphasis in original).   Therefore, defendants' motion amounts to no more than a challenge to the "conclusions drawn by the grand jury based on this single piece of evidence", which is not a ground upon which the Indictment can be dismissed at this stage.  *See* Calandra, 414 U.S. at 345.   Defendants may challenge the enforceability of the agreement at trial, including whether it conferred any property rights in the One Niagara Building to C.B. and S.B., but I recommend that the motion for disclosure of the grand jury minutes for that purpose be denied. [15]


2.      **Motion to Dismiss Counts 1 and 3-9 of the Indictment**

Rule 7(c) requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged".  An indictment is

---

[15]      Although defendants have not established their entitlement to the grand jury testimony at this time pursuant to Rule 6, "[u]nder the Jencks Act [(18 U.S.C. §3500)], the government is obligated to provide a criminal defendant with the grand jury testimony of witnesses who testified at trial".  United States v. Daly, 125 F.3d 845 (2d Cir. 1997).  At that time, defendants may renew their motion, if warranted.

sufficient if it charges a crime with (1) "sufficient precision to inform the defendant of the charges he must meet"; (2) "enough detail that he may plead double jeopardy in a future prosecution based on the same set of events"; and (3) "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury". United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999). However, the Second Circuit has "consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime". Id.

"In deciding a motion to dismiss an indictment for failure to state a criminal offense, a court must assume the truth of the allegations in the indictment and determine whether the indictment is valid on its face." United States v. Larson, 2011 WL 6029985, *1 (W.D.N.Y. 2011). In evaluating the facial sufficiency of the indictment, the court must not "look[ ] beyond the face of the indictment and dr[aw] inferences as to the proof that would be introduced by the government at trial". United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998).

"[A]n indictment is not meant to serve an evidentiary function." United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007). "Rule 12(b) . . . does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds". United States v. Ground, 2014 WL 9940092, *3 (W.D.N.Y. 2014) , adopted 2015 WL 3853071 (W.D.N.Y. 2015). See Rule 12(b)(1) ("A party may raise by pretrial motion any defense, objection or request that the court can determine without a trial on the merits" (emphasis added)). Thus, generally "[t]here is no such thing as a motion for summary judgment in a criminal case". United States v. Parker, 165 F.Supp.2d 431, 458 (W.D.N.Y. 2001).

The sufficiency of the evidence may appropriately be addressed on a pretrial motion to dismiss an indictment only when the government offers "what can fairly be described as a full proffer of the evidence it intends to present at trial".  United States v. Perez, 575 F.3d 164, 166-67 (2d Cir. 2009); United States v. Huntress,  2015 WL 631976,  *9–10 (W.D.N.Y. 2015).  Otherwise, "[a] defendant's first opportunity to make motions testing the strength of the government's proof is at the end of the government's presentation" at trial pursuant to Rule 29. United States v. Davis,  2003 WL 1904039,  *4 (E.D. La. 2003). With these principles in mind, I will address the challenged counts individually.

### a.   Count 1

Count 1 of the Indictment charges defendants with conspiring to defraud the IRS, in violation of 18 U.S.C. §371. To properly charge such a conspiracy (which is commonly referred to as a "Klein conspiracy"), [16] the following elements must be alleged "(1) an agreement to accomplish an illegal or unlawful objective against the United States; (2) commission of an overt act by the conspirators in furtherance of conspiracy; and (3) defendant's intent to agree to the conspiracy and to defraud the United States."  United States v. Nicolo, 523 F. Supp. 2d 303, 327 (W.D.N.Y. 2007), aff'd, 421 Fed. App'x 57 (2d Cir. 2011) (Summary Order).

Rather that challenging whether these elements are alleged in the Indictment, defendants  primarily challenge the evidentiary basis for the allegations.  For example, as allegedly exculpatory evidence, defendants point to materials they provided to a mutual accountant before the investigation commenced and defendant Selvaraj's deposition testimony in

---

[16]     United States v. Klein, 247 F.2d 908 (2d Cir.1957).

a civil lawsuit.  Cambria, *et al.* Affidavit [25], ¶¶16-17.[17]  Since there has not been a proffer by

the government (much less a full proffer) of the evidence that it intends to rely upon at trial, the

issue at this stage of the proceedings remains whether federal crimes are alleged, not whether

they can be proven.

          In arguing for dismissal of Count 1, defendants also point to an alleged

inconsistency between paragraph 7, which alleges that the revenues of Tourist Services "should

have been reported to the IRS," and paragraph 14, which alleges defendant Parlato and the

entities he had an ownership interest in did not "timely file" federal income tax returns.

Cambria, *et al.* Affidavit [25], ¶15.  According to defendants, "[i]t is impossible that the

defendant *did not report the gross receipts* of Tourist Service and that he *did report the gross*

*receipts* of Tourist Services, albeit not timely, to the IRS".  Id. (emphasis in original).  The

government opposes this portion of the motion as also being an evidentiary challenge.

Government's Response [38], p. 12.  While I disagree with that argument, denial of this portion

of defendants' motion is still warranted because it is based on a mischaracterization of the

Indictment, which alleges that defendant Parlato "did not timely file, or cause the timely filing

of, his own federal tax returns for 2006 [-] 2010, and did not timely file, or cause the timely

filing of, tax returns by . . . Tourist Services for the same years".  Indictment [1], p. 8, ¶14.

Lacking is any allegation as to whether (or to what extent) the federal tax returns reported the

gross receipts of Tourist Services.  Therefore, I recommend that this portion of the motion be

denied.

---

[17]     The Affidavit [25] contains two consecutive paragraphs numbered as 17.  *See* pp. 12-13.  The cited paragraph begins on page 12.

      **b.**      **Counts 3-9**

The wire fraud statute criminalizes the conduct of those who "devise[ ] or intend[ ] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . .  communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice". 18 U.S.C. §1343.   Thus, the "essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme".  United States v. Shellef, 507 F.3d 82, 107 (2d Cir. 2007).

Counts 3-9 of the Indictment allege, *inter alia*,  that defendants "did devise, and intend to devise, a scheme and artifice to *defraud* . . . by means materially false and fraudulent pretenses, representations, and promises".  Indictment [1], p. 20, ¶2 (emphasis added).  While these Counts generally track the language of the wire fraud statute, defendants argue that Counts 3-9 "should be dismissed because they fail to allege that the defendant had a specific intent to defraud".  Cambria, *et al.* Affidavit [25],  ¶20.

The "scheme to defraud" element of the wire fraud statute requires "a showing of fraudulent intent: *i.e.,* intent to deceive *and* intent to cause actual harm."  United States v. Chandler, 98 F.3d 711, 715 (2d Cir. 1996) (emphasis in original).  *See* United States v. Bohonus, 628 F.2d 1167, 1172 (9th Cir. 1980) ("[t]he specific intent requirement is an aspect of the 'scheme to defraud' requirement; *i.e.*, there is no fraudulent scheme without specific intent").  Thus, as the government acknowledges, in establishing the scheme to defraud prong of the offense at trial it must prove that defendants acted with a specific intent to defraud. Government's Response [38], p. 14.  To do so, "the Government  . . .  must prove more than just

that the defendant intentionally committed the conduct that was fraudulent or that he knew it was deceptive; the Government must also show that the defendant knew that his conduct was intended to harm the victim, by depriving him of money or property".  United States v. Whitman, 904 F. Supp. 2d 363, 372 (S.D.N.Y. 2012), aff'd, 555 Fed. App'x 98 (2d Cir. 2014) (Summary Order).

However, the government disputes that it must plead that defendants acted with specific intent.  While it cites a variety of non-controlling authority in support of  that argument,[18] the Second Circuit has held that an  indictment  "is required to allege that the defendant contemplated actual harm that would befall victims due to his deception in order to meet the 'scheme to defraud' prong" of the wire fraud statute".  Shellef, 507 F.3d at 107.

Nevertheless, the government correctly notes (government's Response [38], pp. 14-15) that even under that standard, the Indictment sufficiently alleges that defendants acted with intent to defraud by alleging that defendants contemplated actual harm to "others with an interest in the One Niagara Building" by attempting to "conceal th[e] gross rents and parking lot receipts" of the One Niagara Building from them.  Indictment [1], p. 20, ¶3.  See United States v. Hunter, 13 F. Supp. 2d 586, 589 (D. Vt. 1998) ("although the precise phrase 'with intent to defraud' does not appear, the counts allege that the Defendant 'devised a scheme and artifice to defraud law clients and others.'  This language, plus the detailed facts concerning schemes to

---

[18]      Government's Response [38], p. 14 n. 3  (citing United States v. Freeman, 619 F.2d 1112, 1117 (5th Cir. 1980) ("[t]he indictment need not specifically charge, but the government must prove, 'a specific intent to commit fraud'")); United States v. Kent, 608 F.2d 542, 545 n. 3 (5th Cir. 1979) ("[b]ecause the statute does not expressly mention intent, an indictment for mail fraud need not specifically charge the necessary specific intent"); United States v. Taylor, 73 Fed. App'x 972, 973 (9th Cir. 2003) ("[t]he indictment's allegation that Taylor 'knowingly devised . . . a scheme to defraud' was sufficient to put Taylor on notice that the prosecution had to prove specific intent to defraud").

defraud and the correct statutory citation, have provided adequate notice of the offense charged").

Apart from their facial challenge to Counts 3-9, defendants raise a number of arguments directed to the evidentiary basis for these counts.  For example, they argue that "there is no factual basis" to support the allegation that they intended to divert and conceal money (Cambria, *et al*. Affidavit [25], ¶22), and that "[a]ll money that was transferred through these accounts was disclosed to the shared accountant, and therefrom with the parties alleged to have been victims" (id., ¶25).  These arguments, which go well beyond the confines of the allegations of the Indictment, must be resolved by the jury.  Therefore, I recommend that this motion be denied.


**3.      Motion to Dismiss Counts 3-9, 11-16, and 18 as Multiplicitous**[19]

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed. This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once."  United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not".  Blockburger v.

---

[19]      Although this portion of defendants' motion is captioned as seeking "disclosure of the grand jury minutes and legal instructions" (Cambria, *et. al* Affidavit [25], p. 17, Point IV), it contains no arguments in support of that request for relief.  For that reason, defendants' request for the disclosure of the grand jury materials is denied.  *See* United States v. Fuentes, 2012 WL 4754736, *3 (W.D.N.Y.), adopted, 2012 WL 4754744 (W.D.N.Y. 2012) (defendant's "arguments are . . . largely conclusory, boilerplate, undeveloped and bereft of any supporting case authority. To the extent his arguments are raised in such a fashion, I consider them waived, and recommend the denial of this aspect of defendant['s] . . . motion on this basis").

United States, 284 U.S. 299, 304 (1932).  Thus, "the critical double jeopardy inquiry is not

factual, *i.e.*, whether the same conduct is at issue in charges brought under different statutes, but

legal, *i.e.*, whether the 'offense' - in the legal sense, as defined by Congress - complained of in

one count is the same as that charged in another".  United States v. Basciano, 599 F.3d 184, 198

(2d Cir. 2010).

Generally, "[i]t is well established, however, that money laundering and wire

fraud are separate offenses."  United States v. Rude, 88 F.3d 1538, 1546 (9th Cir. 1996).

Here, defendants argue that the wire fraud violations alleged in Counts 3-9 and the money

laundering counts in Counts 11-16 and 18 must be dismissed as multiplicitous, since they arise

from the same transactions.  Cambria, *et. al* Affidavit [25], ¶35.  The government acknowledges

that since money laundering involves the proceeds of unlawful activity, "it is well settled that the

transaction charged as money laundering cannot be the same transaction through which the funds

became tainted by crime'" Id., pp. 17-18 (*quoting* United States v. Shellef, 732 F.Supp.2d 42,

72-73 (E.D.N.Y. 2010)), and that "the specific wires identified as part of the wire fraud scheme .

. . at counts 3 through 9 mirror the transactions alleged as money laundering . . . at counts 11

through 16 and 18".  Id., p. 18.  Instead, it argues that the money laundering counts do arise from

the same transactions through which the monies became tainted by wire fraud.  Id., pp. 18-19.

18 U.S.C. §1957 prohibits "knowingly engag[ing] or attempt[ing] to engage in a

monetary transaction in criminally derived property," which is defined as "any property

constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. §1957(a),

(f)(2).  "[F]unds become proceeds [of a criminal offense] when they are 'derived from an already

completed offense, or a completed phase of an ongoing offense".  United States v. Szur, 289

F.3d 200, 214 (2d Cir. 2002) (emphasis omitted).

Here, the government argues that the monies transacted in the money laundering counts already constituted proceeds of unlawful activity, since they were derived from "the first step in the wire fraud scheme" that commenced in or about mid 2006 (Indictment [1],  p. 20, ¶2) by "the diversion . . . of the revenue from . . . others (*i.e.* the putting of cash into ATMs)". Government's Response [38], p. 19.  "Following this initial diversion, the defendants then allegedly transferred the revenue between multiple accounts  . . . to further conceal and disguise the . . . gross receipts of Tourist Services".  Government's Response [38], p. 19.  Based upon this interpretation of the Indictment, which defendants do not contest, I conclude that Counts 3-9, 11-16, and 18 of the Indictment are not multiplicitous, and therefore recommend that the motion be denied.[20]

**4.      Motion to Dismiss Counts 3-9, 11-16, and 18 as Duplicitous**

"An indictment is duplicitous if it joins two or more distinct crimes in a single count."  United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992). The policy considerations underlying prohibitions on duplicitous indictments include: "[A]voiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution."  Id.

---

[20]      Although not argued by the government, even if these counts were determined to be multiplicious based upon the allegations of the Indictment, it would be premature to dismiss these counts, since "the double jeopardy concerns implicated by multiplicitous counts do not arise unless a defendant is actually convicted of, rather than charged with, multiplicitous counts".  United States v. Nguyen, 2014 WL 1512030 (W.D.N.Y.), adopted, 2014 WL 1795045 (W.D.N.Y. 2014).  *See* United States v. Josephberg, 459 F.3d 350, 355 (2d Cir. 2006); United States v. Huntress, 2015 WL 631976, *13-14 (W.D.N.Y. 2015); United States v. Rivera, 2011 WL 1429125, *4 (E.D.N.Y. 2011) ("the issue of whether the counts are multiplicitous in violation of the Double Jeopardy Clause is premature at the pretrial stage").

A court may consider the record as a whole to determine whether an indictment is duplicitous.

*See* Walsh, 194 F.3d at 46.  Significantly, a "[d]uplicitous pleading . . .  is not presumptively

invalid" unless it prejudices the defendant.  United States v. Olmeda, 461 F.3d 271, 281 (2d Cir.

2006).

  Counts 3-9 of the Indictment, which are  incorporated by reference into Counts

11-19, allege that defendants "devise[d], and intend[ed] to devise, a scheme and artifice to

defraud R.H. Building, L.R., and others with an interest in the One Niagara building, including

but not limited to C.B. and S.B.", and that part of the scheme was to conceal the revenues

generated by the One Niagara Building from these individuals, and also to falsely represent to

L.R. that Tourist Services lacked sufficient revenues to make payments pursuant to the Operating

Agreement.  Indictment [1], pp. 20-21, ¶¶2-4.

  Defendants' arguments center on the inclusion of C.B. and S.B. as alleged victims

of the scheme to defraud those with an interest in the One Niagara Building in Counts 3-9.

Cambria, *et al.* Affidavit [25], ¶37.  They argue that "there is nothing in the indictment that

suggests that [C.B. and S.B.] had an interest in [the One Niagara Building], save for two chance

conclusory statements", and dispute the evidentiary basis for those allegations by contending that

the Letter of Intent giving rise to alleged interest of C.B. and S.B. in the One Niagara Building

was never fully executed.  Id., ¶¶38- 44.

  While captioned as a duplicity challenge, these arguments mount no such

challenge, *i.e.,* that the Indictment joins two or more distinct and separate offenses in a single

count.  Nor do their challenges to the evidentiary underpinnings of the allegations of the

Indictment constitute a basis for dismissing these counts of the Indictment.  *See* Perez, 575 F.3d

at 166-67.

Alternatively, defendants argue that even if the government established that the C.B. and S.B. had an interest in the One Niagara Building, their interest is "unrelated to the alleged scheme . . . in Counts 3-9 and 11-19",  since the Indictment "does not name [C.B. and S.B.] as being among those the defendants allegedly prevented from knowing the source and location of [the diverted funds]".  Id., ¶44.   Defendants argue that it is "prejudicially duplicitous" to require them to defend against these counts, which "indiscriminately mesh[]" C.B. and S.B. together with other alleged victims of the scheme.

These arguments are belied by the allegations of the Indictment, which specifically allege that C.B. and S.B.  were among those individuals and entities that the defendants prevented from knowing the source and location of the diverted funds.  See Indictment [1], p. 20, ¶3 (alleging that defendants "took steps to conceal th[e] gross rents and parking lot receipts [of the One Niagara Building] from  . . . others with an interest in the One Niagara Building, including . . . C.B. and S.B.").  Moreover, "a single count charg[ing] several acts [is] not necessarily  . . .  duplicitous".  Nicolo, 523 F. Supp. 2d  at 312.  It has been "long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme". United States v. Olmeda, 461 F.3d 271, 281 (2d Cir. 2006).

Thus, the fact that C.B. and S.B. may have been defrauded in a manner different from the other alleged victims does not render these counts duplicitous, since all of the alleged victims were the subject of defendants' scheme and artifice to defraud those with an interest in the One Niagara Building.  See United States v. Mason, 2016 WL 2755401, *2 (N.D. Ill. 2016) (rejecting the argument that the wire fraud counts were duplicitous, where the victims were "not alleged to be connected and  . . . the contracts under which the alleged fraud occurred were

signed at different times and had different terms and conditions"); United States v. Hollnagel, 2011 WL 3664885, *11 (N.D. Ill. 2011) (same). Therefore, I recommend that this motion be denied. [21]


5.      **Motion to Strike Surplusage**

Rule 7(d) provides that "the court may strike surplusage from the indictment". "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial . . . . If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir.1990). Since  such motions are held to an "exacting standard" (id.), "only rarely is alleged surplusage stricken from an indictment". United States v. Murgio, 2016 WL 5107128, *16 (S.D.N.Y. 2016).

Arguing that "[t]his is a complex case and the repetitive language is prejudicial, confusing and overwhelming", defendants seek to strike "all repetitions of count 1 in the counts that follow as surplusage". Cambria, *et al.* Affidavit [25], ¶51. In response, the government argues that "[t]he allegations contained in Count 1 are relevant to the charges and thus do not meet the standard for surplusage". Government's Response [38], p. 23.

Since it appears that the allegations of Count 1, which are incorporated by reference into the other counts of the Indictment, are relevant to those counts, I see no basis, at this time, for striking them as surplusage. Defendants' claims of prejudice arising from the

---

[21]        Although not argued by the government, "even if an indictment is duplicitous, and even if that duplicity presents some risk of prejudice to the defendant, that risk can often be avoided through jury instructions making clear to the jurors that they must unanimously agree on the particular conduct underlying the conviction". Nicolo, 523 F. Supp. 2d at 314.

inclusion of these allegations are also premature, and better addressed by the trial judge, since

"there is nothing in the law that requires submission of the indictment to the jury. While the court

may elect to do so, the ultimate decision to submit it in its entirety, or in some redacted form,

will depend on the nature of the trial evidence when the time comes for making that decision".

United States v. Bruno, 2009 WL 2601249, *6 (N.D.N.Y. 2009).  Therefore, this motion is

denied, without prejudice to renewal before the trial judge.


**6.      Motion for Production of Discovery Pursuant to Rule 16 and for Notice of Intention Pursuant to Rule 12**

Apart from the government's Brady,  Giglio,[22] and Jencks Act obligations, which

are addressed separately, "Rule 16 is . . . the sole authorized vehicle under the Federal Rules of

Criminal Procedure for pre-trial discovery in criminal cases".  United States v. Louis, 2005 WL

180885, *2 (S.D.N.Y. 2005).  Defendants move pursuant to Rule 16 for various forms of

discovery and for notice pursuant to Rule 12 of the evidence that the government intends to

utilize at trial. Cambria, *et al.* Affidavit [25], ¶¶52-69.

With the exception of its expert disclosures pursuant to Rule 16(a)(1)(G), which it

states will be produced in advance of trial or as directed by the trial judge, the government

represents that it has "provided all material presently within its possession that is within the

purview of Rule 16", and that it is "in compliance with Rule 12(b)(4)(B). Government's

Response [38], pp. 23-24.   In response to the government's representations, defendants fail to

point to any specific deficiency in the government's production or notice pursuant to Rule

12(b)(4)(B).

At this point, I have no reason to question the government's uncontested

representations.  *See* United States v. Upton, 856 F. Supp. 727, 746 (E.D.N.Y. 1994) ("[t]o the

---

[22]      Giglio v. United States, 405 U.S. 150 (1972).

extent that the government represents that it 'has produced every document in its possession which relates in any way to this case' . . . the court must assume the veracity of that representation. The alternative to such an assumption would require the court to examine numerous file drawers of documents to verify that representation which is as obviously undesirable as it is impractical"). *See also* Theodore v. State of New Hampshire, 614 F.2d 817, 822 (1st Cir.1980) ("[a]ttorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations"); United States v. Johns, 336 F.Supp.2d 411, 424 (M.D.Pa. 2004) ("[t]he court is entitled to rely on the representations of counsel, as officers of the court"). Therefore, this motion is denied, without prejudice.

### 7.     Motion for Production of Jencks Act Material

Defendants seek production of Jencks Act material "at least 60 days in advance of trial". Cambria, *et al.* Affidavit [25], ¶¶70, 157-59. "Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material." United States v. Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010). *See* United States v. Coppa, 267 F.3d 132,145 (2d Cir. 2001) (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); United States v. Seabrook, 2010 WL 5174353, *3 (S.D.N.Y. 2010) ("[t]he Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"); United States v. Exolon Esk Co., 1995 WL 46719, *3 (W.D.N.Y. 1995) ("it is . . . uniformly recognized that a district court generally lacks authority to order pretrial production of Jencks materials over an objection by the government"). Nonetheless, the government agrees to produce this material "at a time no later than two weeks

prior to trial or as ordered by the [trial court]". Government's Response [38], p. 26.   Therefore, this motion is denied.

### 8.    Motion for Production of the Statements of Co-Defendants

In response to defendants' request for production of the statements of their co-defendants (Cambria, *et al.* Affidavit [25], ¶¶71-72), the government represents that it "has provided all written and recorded statements of the defendants in discovery".  Government's Response [38], p. 27.  Based upon that representation, defendants' motion is denied.

### 9.    Motion to Exclude Statements of Non–Testifying Co–Conspirators pursuant to <u>Bruton</u>[23]

Defendants move to "preclude  . . . statements that may have been made by non-testifying co-conspirators/co-defendants which may implicate [them] in any way".  Cambria, *et al.* Affidavit [25], ¶76.  Among the statements they seek to preclude are those that they believe were made by defendant Selvaraj during a custodial interrogation with the FBI on May 28, 2015. <u>Id</u>.  While the government "recognizes that using statements of a defendant at a joint trial may implicate <u>Bruton</u> concerns", it argues that "no conflict has been identified by either defendant to date and thus this issue is not yet ripe for discussion". Government's Response [38], p. 25.  It also represents that it is unaware of any statements given by defendant Selvaraj on May 28, 2015, but has produced to defendants a report of a December 10, 2013 meeting that she had with the FBI.  <u>Id</u>.

The "[r]esponsibility for determining whether declarations of an alleged conspirator should be admitted against another rests on the shoulders of the trial judge".  <u>United</u>

---

[23]    <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

States v. Mastropieri, 685 F.2d 776, 787 88 (2d Cir. 1982). *See* United States v. Anguiera, 2012 WL 1232096, *1 (W.D.N.Y. 2012) ("the relief sought for excluding non-testifying co-conspirators statements . . . [is] better considered by the District Judge prior to trial and are deferred for that consideration"); United States v. Busch, 2013 WL 3759944, *3 (W.D.N.Y. 2013) ("challenges to the admissibility of a statement under [Bruton] are more appropriately determined by the presiding District Judge at trial"). Therefore, this motion is denied, without prejudice to renewal before the trial judge.

### 10.     Motion for a Bill of Particulars

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." Walsh, 194 F.3d at 47. "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). *See* United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("[i]n determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

Although "there is a special concern for particularization" when addressing conspiracy charges, United States v. Palmer, 2012 WL 2953659, *3 (W.D.N.Y. 2012) (*citing* United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988)),  "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge". Barnes, 158 F.3d at 666. Moreover, "the Government need not prove overt acts in furtherance of the conspiracy . . . or particularize on the facts surrounding the formation of the conspiracy or when a given defendant joins it". Palmer, 884 F. Supp. 2d at 29. With this standard in mind, I will address defendants' requests for particularization.

Here, defendants seek a variety of particularization for each count of the Indictment (Cambria, *et al.* Affidavit [25], ¶83), as well as particularization of other information not included in the Indictment. Id., ¶84. In support of their requests for particularization, defendants argue that while it "appears to be a complex case", the Indictment, which can be "fairly characterized as 'bare bones'", is "overly general and unspecific". Id., ¶¶87, 101.

Contrary to defendants' characterization of the 28-page Indictment, it in fact provides ample detail of the government's factual allegations supporting each count of the Indictment.  The government has also provided defendants with more than 65,000 pages of discovery.  Government's Response [38], p. 23.  While I am mindful that "[t]he Government d[oes] not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided",  Bortnovsky, 820 F.2d at 575, "[t]his is hardly a situation . . . in which defendants, faced with an indictment that does little more than track the language of the statute, have had an undifferentiated mass of documents dumped on them at the eleventh hour, or where the defendants remain in the dark about the specific acts of which they are accused." Nicolo, 523 F. Supp. 2d at 317.  Nor, for many of  the 45 individual requests for particularization, have defendants attempted to satisfy their burden by making specific arguments as to why the information sought is necessary to prepare for trial and to prevent surprise.  Thus, I generally conclude that, notwithstanding the complexities of the case, defendants have sufficient information to prepare for trial and to prevent surprise.

The only requests for particularization that warrant additional consideration are those that defendants have supported with specific arguments of need.  With respect to the Klein conspiracy alleged in Count 1, defendants argue that they are entitled to particularization of the monetary amounts, "information as to [the] government's method of proof", and  "the source, date, and character of the income which the government claims the defendants did not report". Cambria, et al. Affidavit [25], ¶¶91-93.  In support of their entitlement to this particularization, defendants rely upon United States v. Goldstein, 56 F.R.D. 52, 55 (D. Del. 1972) and United States v. DeGroote, 122 F.R.D. 131 (W.D.N.Y. 1988).  Id. However, particularization was ordered in those cases on charges of submitting false tax returns,  in violation of 18 U.S.C.

§7206(1), as opposed to charges of a <u>Klein</u> conspiracy.  Moreover, Count 1 of the Indictment is not bereft of detail; it contains the manner and means of the alleged conspiracy and a number of overt acts committed in furtherance of the conspiracy by reference to specific amounts, accounts, shell entities used , and dates.  *See* Indictment [1], pp. 5-19.

  With respect to the conspiracy counts (Counts 1 and 10), defendants seek identification of the unindicted co-conspirators and the dates the co-conspirators joined and left the conspiracy, as well as the manner and means of the conspiracy itself.  Cambria, *et al.* Affidavit [25], ¶94.   In support of their entitlement to the identity of the co-conspirators, defendants point to the extended timeframe of the alleged conspiracy (*i.e.*, from 2006 to 2014) and argue that they require the identity of all co-conspirators to be "able to prove that they did not enter into an agreement to defraud the IRS".  <u>Id</u>., ¶¶95-96.   Since "there is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted. . . . [a]s with any bill of particulars, the question is  whether the names of unindicted co-conspirators are necessary to prepare a defense and avoid surprise."  <u>Messina</u>, 2012 WL 463973 at 10.  "In deciding whether to grant requests for the identities of unindicted co-conspirators, courts in this Circuit have considered the following six factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government has otherwise provided adequate notice of the particulars; (4) the volume of pre-trial disclosures; (5) the potential danger to coconspirators; and (6) the potential harm to the Government's investigation."  <u>Id</u>.

  On balance, these factors weigh in favor of denying this particularization.  While the conspiracy spans eight years and the government has not alleged that there would be any danger posed by identifying the co-conspirators, it remains the fact that the Indictment contains

extensive detail of the alleged conduct, especially when combined with the discovery produced, to permit defendants to adequately prepare for and prevent surprise at trial. *See* Nicolo, 523 F. Supp. 2d at 317 ("the names of unindicted coconspirators need not be provided").

I likewise deny the remaining particularization sought. While I recognize that "fraud charges . . . by their nature carry a greater potential for causing unfair surprise at trial due to their complexity", United States v. Kahale, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009), aff'd, 477 Fed. App'x 818 (2d Cir. 2012) (Summary Order), the Indictment sufficiently details the manner and means of the alleged conspiracies. Defendants are not entitled to the dates the various co-conspirators joined and exited the alleged conspiracy. *See* United States v. James, 2007 WL 914242, *26 (E.D.N.Y. 2007) ("the government need not specify when a particular defendant joined the conspiracy"); Nicolo, 523 F. Supp. 2d at 317 ("[a]s a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars. More specifically, details regarding . . . when each participant entered into the conspiracy need not be revealed before trial"); United States v. Chen, 2007 WL 2244213, *10 (S.D.N.Y. 2007) ("[t]he Second Circuit . . . ha[s] routinely denied requests for Bills of Particulars concerning the 'wheres, whens, and with whoms' of the crime charged"). Therefore, this motion is denied.

### 11. Motion for Disclosure of Informants and the Government's Witnesses

Defendants seek both the identity of the government's informants (Cambria, *et al.* Affidavit [25], ¶¶102-15) and pretrial access to the government's witness (id., ¶¶116-20), as well as information concerning both groups of individuals. Id., ¶121. Turning first to defendants' request for informant identities, the government is not required to provide early disclosure of the identities of informants unless "an informer's identity, or of the contents of his communication,

is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause". Roviaro v. United States, 353 U.S. 53, 60–61(1957). "The defendant bears the burden of showing the need for disclosure of an informant's identity . . . and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997).

"The defendant is generally able to establish a right to disclosure where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.1988). Disclosure is not required if a defendant fails to show that "the testimony of the informant would . . . [be] of even marginal value to the defendant's case". Id. "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324.

Without offering any basis for their belief, defendants argue that "it is apparent that each of the informant[s] in this case is a material witness". Cambria, et al. Affidavit [25], ¶114. Without more, the need for disclosure of informant identities has not been established. See United States v. Boone, 2003 WL 841088, *6 (S.D.N.Y. 2003) ("[m]ere speculation . . . that the informer may possibly be of some assistance does not overcome the strong public interest in protecting informants").

Defendants also seek pretrial disclosure of the government's prospective witnesses, but acknowledge that "the general rule . . . in a non-capital case [is that] the accused has no constitutional right to require production of the names and addresses of prospective

witnesses".  Cambria, *et al.* Affidavit [25], ¶116 .  Rule 16 also "does not require the

Government to furnish the names and addresses of its witnesses in general".   <u>United States v.</u>

<u>Bejasa</u>, 904 F.2d 137, 139-40 (2d Cir. 1990).   However, the court may order such disclosure

where the defendant makes "a *specific* showing that disclosure [is] both material to the

preparation of the defense and reasonable in light of the circumstances surrounding the case".

<u>Id</u>. at 139-40 (emphasis in original).

Defendants' motion falls short of meeting that standard.  As argued by the

government, "no basis has been asserted by the defendant [*sic*] to warrant compliance with such

a request".  Government's Response [38], p. 31.  Nevertheless, this information shall be provided

in accordance with the scheduling order to be issued by the trial judge.  *See* <u>United States v.</u>

<u>Maisonet</u>, 2009 WL 2876170, *8 (W.D.N.Y. 2009) (denying the defendant's motion for

disclosure of a witness list, but noting that "[t]he Court expects . . .  that such information shall

be provided to counsel for each of the defendants in accordance with the scheduling order to be

issued by the trial judge").  Therefore, this motion is denied, without prejudice to renewal (if

necessary) before the trial judge.


### 12.    Motion to Compel Production of <u>Brady</u>/<u>Giglio</u> Material

Defendants seek the entry of an order requiring the disclosure of various

categories of <u>Brady</u> and <u>Giglio</u> material within the government's possession as "promptly as

possible".  Cambria, *et al.* Affidavit [25], ¶¶123-51.  In response, the government "acknowledges

its affirmative continuing duty to provide a defendant with exculpatory evidence" and agrees to

provide "impeachment <u>Giglio</u> material . . . in accordance with the scheduled set by the District

Court prior to trial and no later than when the government produces . . . the Jencks Act material in this case". Government's Response [38], pp. 31-33.

> "The government's obligations under <u>Brady</u> . . . are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." <u>United States v. Coppa</u>, 267 F.3d 132, 135 (2d Cir. 2001) (*citing* <u>Giglio</u>, 405 U.S. at 154). As defendants acknowledge (Cambria, *et al.* Affidavit [25], ¶149), generally, "<u>Brady</u> and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant". <u>Coppa</u>, 267 F.3d at 146. "[A]s long as a defendant possesses <u>Brady</u> evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." <u>Id</u>. at 144. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case". <u>Id</u>. at 146.

> "Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to <u>Brady</u> where the Government, as here, has made a good-faith representation to the Court and defense counsel that it recognizes and will comply with its disclosure obligations under <u>Brady</u>." <u>United States v. Kelly</u>, 91 F. Supp. 2d 580, 584 (S.D.N.Y. 2000). At this point, I have no reason to question the government's representations. *See* <u>United States v. Savarese</u>, 2002 WL 265153, *2 (S.D.N.Y. 2002) ("district courts in this circuit routinely accept the type of representation that the Government has made concerning <u>Brady</u> material"). Therefore, defendants' motion is denied. Consistent with <u>Coppa</u>, the government shall timely disclose

Brady and Giglio materials to defendants.  *See* United States v. Hill, 2012 WL 912948, *5 (W.D.N.Y. 2012).


### 13.    Motion for Disclosures Pursuant to Fed. R. Evid. 404(b), 608 and 609

Defendants seek pretrial disclosure of any evidence that the government intends to introduce at trial pursuant to Fed. R. Evid. 404(b) and "any other evidence the government intends to use to impeach defendants' credibility if they should choose to testify".  Cambria, *et al.* Affidavit [25],  ¶¶152-53.  They further seek a "pretrial hearing to determine the admissibility of such evidence".  Id., ¶153.

Fed. R. Evid. 404(b)(2)(A) requires that the  government "provide reasonable notice of the general nature of any such [Fed. R. Evid.  404(b)] evidence that the prosecutor intends to introduce at trial".   The government responds that it will provide the required notice "well in advance of trial".  Government's Response [38], p. 34.  Based upon that representation, this portion of the motion is denied, and the government shall provide the required notice by a time  no later than directed by the trial judge.  *See* United States v. Busch, 2014 WL 2435596, *5 (W.D.N.Y. 2014).

Defendants also appear to request pretrial disclosure of Fed.R.Evid. 608 and 609. material, by seeking "any other evidence the government intends to use to impeach defendants' credibility if they should choose to testify".  Cambria, *et al.* Affidavit [25], ¶153.  *See* United States v. Mullen, 243 F.R.D. 54, 67 (W.D.N.Y. 2006).  "[T]he only notice requirement imposed by [Fed. R. Evid. 608 and 609] applies where a party intends to introduce evidence of a conviction that is more than ten years old. Under such circumstances, Rule 609(b) mandates that 'the proponent [give] to the adverse party sufficient advance written notice of intent to use such

evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.'
To the extent the government intends to use a conviction more than 10 years old, it must comply
with this requirement. The government has no obligation to provide the defendants with notice of
any material that will be used to impeach him pursuant to Rule 608 should he elect to testify."
United States v. Barnett, 2009 WL 1044559, *2 (W.D.N.Y. 2009).  Since the government does
not specifically respond to this portion of the motion,  it is granted and the government shall
provide the  notice required by Fed. R. Evid. 609(b).

   To the extent that defendants further seek a pretrial hearing concerning the
admissibility of any such evidence (Cambria, *et al*. Affidavit [25],  ¶153), that portion of the
motion is denied, without prejudice to renewal before the trial judge.


   **14.**  **Motion for Preservation of Rough Notes**

   In response to defendants' motion for an order requiring all government agents
associated with this case to preserve their rough notes (Cambria, *et al.* Affidavit [25],  ¶160), the
government represents that it "will endeavor to maintain such materials, should they exist".
Government's Response [38], p. 35.  Based upon that representation, this portion of the motion is
denied as moot.  Defendants also seek an order requiring the government to preserve, in
unadulterated form, "all evidence acquired in the[ ] investigation of the defendants". Cambria, *et
al.* Affidavit [25], ¶162.   Since the government fails to respond to that portion of the motion, it is
granted.

15.     **Motion to *Voir Dire* Government Experts Outside the Presence of the Jury**

As argued by the government, this request should be made to the trial judge. Government's Response [38], pp. 35-36. Therefore, this motion is denied, without prejudice to renewal before the trial judge.


16.     **Motion for Leave to Make Other Motions**

Defendants move for leave to file additional motions "which may be necessitated by due process of law, by the Court's ruling[s] . . . by additional discovery". Cambria, *et al.* Affidavit [25], ¶169. As argued by the government, defendants may not seek to file additional motions for relief that could have been brought by the deadline for filing pretrial motions. Government's Response [38], p. 36. Therefore, the motion is denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted. *See* Rule 12(c)(3).

**B.      Government's Cross-Motion for Reciprocal Discovery**

The government seeks reciprocal discovery pursuant to Rule 16(b)(1)(A)-(C) and written notices, if any, pursuant to Rules 12.1, 12.2, and 12.3. Government's Response [38], p. 36-37. Since defendants have not responded to the government's cross-motion, it is granted.


**CONCLUSION**

For these reasons, the government's cross-motion for reciprocal discovery is granted, and defendants' non-dispositive motions are granted in part and denied in part; and I further recommend that defendants' motions to dismiss the Indictment be denied.

Unless otherwise ordered by Judge Geraci, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by February 27, 2017.  Any requests for extension of this deadline must be made to Judge Geraci.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: February 13, 2017

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge