# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

_____

|  |  |
|---|---|
| | **NOV 2017 GRAND JURY** |
| | **(Impaneled November 3, 2017)** |
| **THE UNITED STATES OF AMERICA** | |
| | **SUPERSEDING INDICTMENT** |
| *-vs-* | **15-CR-149-G** |
| | |
| **FRANK R. PARLATO, JR.** | **Violations:** |
| (Counts 1-18), and | Title 18, United States Code, |
| **CHITRA SELVARAJ** | Sections 371, 1343, 1957 and 2; |
| (Counts 1-18) | (18 Counts and 2 Forfeiture Allegations) |

## INTRODUCTION

### The Grand Jury Charges That:

At all times relevant to this Superseding Indictment:

1.      Defendant FRANK R. PARLATO, JR. ("PARLATO"), conducted revenue-generating activities at and around a building known as the One Niagara Building located at 360 Rainbow Boulevard, Niagara Falls, New York (hereinafter "One Niagara Building"). PARLATO received proceeds from his involvement in these businesses and then concealed and disguised the nature, the location, the source, the ownership, and the control of the funds.

2.      Defendant, CHITRA SELVARAJ ("SELVARAJ"), worked with and assisted defendant PARLATO with the operation of his revenue-generating activities. Among other things, SELVARAJ assisted in carrying out financial transactions in ways intended to conceal and disguise the nature, the location, the source, the ownership, and the control of the funds.

**Whitestar Development Corporation, One Niagara, LLC, & Tourist Services, LLC**

3.      In or about November 2004, defendant PARLATO and D.H., a person known to the Grand Jury, through business entities owned and controlled by each of them, formed One Niagara Plaza, LLC.  One Niagara Plaza, LLC was a two-member entity formed pursuant to an Operating Agreement.  The members of One Niagara Plaza, LLC were Whitestar Development Corporation ("Whitestar"), a corporation owned and controlled by defendant PARLATO, and Incredible Investments Limited, a corporation owned and controlled by D.H.  One Niagara Plaza, LLC became known as One Niagara, LLC ("One Niagara") sometime after November 2004.  Beginning in or about November 2004, One Niagara had an interest in the real property located at the One Niagara Building.

4.      On or about April 14, 2006, defendant PARLATO and L.R., a person known to the Grand Jury, through business entities owned and controlled by them, formed Tourist Services, LLC ("Tourist Services").  According to the Operating Agreement by which it was established, Tourist Services was a two-member entity consisting of defendant PARLATO on behalf of FPInc., an entity which was to be formed, owned, and controlled by defendant PARLATO, and RH Niagara Building, LLC, an entity owned and controlled by L.R.

5.      Defendant PARLATO never formed FPInc. Instead, he used Whitestar Development in place of FPInc. with respect to the Tourist Services Operating Agreement.

6.      According to the Tourist Services Operating Agreement, FPInc. and RH Niagara Building, LLC were to each own 50% of Tourist Services, and each were to be entitled to 50% of the distributions of Tourist Services.  The Operating Agreement defined distributions, in part, as "any cash or property paid to a Member of the Company from the operations of the Company."  Additionally, the Operating Agreement specified that Tourist

2

Services "shall make a mandatory distribution of no less than $200,000 to RH [Niagara Building, LLC], each calendar year, commencing with the fiscal year ending December 31, 2008."

7.      Pursuant to the Tourist Services Operating Agreement, defendant PARLATO was the "President of the Company to handle the day-to-day affairs of the Company." The Tourist Services Operating Agreement further required defendant PARLATO and other members of Tourist Services to "in a timely manner furnish to the Company all pertinent information in such member's possession relating to Company operations that is necessary to enable the Company's income tax returns to be prepared and filed." The Operating Agreement further required defendant PARLATO, on behalf of Tourist Services, to make certain distributions to L.R. and his entities.

8.      Tourist Services was formed to be the "master tenant" for the various tourist and restaurant businesses that sublet space in the One Niagara Building. Tourist Services also managed the cash-basis parking lot located adjacent to the One Niagara Building ("parking lot"). At or about the time Tourist Services was formed, defendant PARLATO, on behalf of Tourist Services signed a lease agreement with One Niagara. That lease agreement required Tourist Services to pay 25% of the gross revenues generated by Tourist Services through its operations on the property to One Niagara as rent; Tourist Services was to retain the remaining 75% of gross revenues.

9.      After Tourist Services became the master tenant at the One Niagara Building, the entity relationships were as follows: an ownership interest in the One Niagara Building was held by One Niagara, LLC, an entity consisting of a PARLATO entity (Whitestar) and a D.H. entity (Incredible Investments Ltd). The master tenancy was run by defendant

PARLATO on behalf of Tourist Services, an entity consisting of a PARLATO entity (Whitestar) and a L.R. entity (RH Niagara Building, LLC).

10.     In or about late July 2010, P.G., a person known to the Grand Jury, bought defendant PARLATO's interest in Whitestar Development, including his management rights and ownership in the One Niagara Building, for a total of $1,000,000 to be paid over ten years. However, in or about 2011, P.G., with the financial assistance of L.R. and his entities, accelerated the payments to defendant PARLATO.  In or about September 2011, L.R., through an entity controlled by him, paid PARLATO $575,000 in order to satisfy the remaining outstanding balance.

**Revenue Sources at One Niagara Building**

11.     The One Niagara Building generated revenue from at least four sources: (1) the cash-basis parking lot; (2) commissions from tour sales; (3) rents from food vendors; and (4) rents from retail merchandise vendors.

12.     During the relevant times of this Superseding Indictment, the tour operators who sold tours at the One Niagara Building included, among others, C.T. and O.T.F., entities known to the Grand Jury.

13.     During the relevant times of this Superseding Indictment, there were numerous food and retail vendors operating at the One Niagara Building, including, among others, B.O., Inc., P.G., D.M., and D.C., an entity and persons known to the Grand Jury.

## COUNT 1

**(Conspiracy to Impede, Obstruct and Impair the IRS and to Commit Wire Fraud)**

**The Grand Jury Further Charges That:**

1.     The allegations of the Introduction of this Superseding Indictment are realleged and incorporated by reference herein.

2.     From in or about mid-2006 to in or about 2017, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendants, FRANK R. PARLATO, JR. and CHITRA SELVARAJ, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury:

(a)     to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service of the Treasury Department ("Internal Revenue Service"), in the ascertainment, computation, assessment, and collection of revenue, that is, income taxes, in violation of Title 18, United States Code, Section 371; and

(b)     to commit an offense against the United States, that is, to devise a scheme and artifice to defraud L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building, and for obtaining money and property of L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, to transmit, and to cause to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343.

## Object of the Conspiracy

3.      The object of the conspiracy was to enrich defendant PARLATO by obtaining money and purposefully hiding it from the Internal Revenue Service and individuals with an interest in the revenue generating activities at the One Niagara Building:

## The Manner and Means of the Conspiracy

4.      Beginning in or about mid-2006 and continuing to in or about 2017, the exact dates being unknown to the Grand Jury, the defendants PARLATO and SELVARAJ, obtained proceeds and thereafter took steps to conceal those proceeds from, among others, the Internal Revenue Service, L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building, using the manner and means described below:

**Proceeds Generated at One Niagara Building from April 2006 to late July 2010**

(a)      From at least in or about April 2006 to in or about late July 2010, defendant PARLATO functioned as the manager and chief operating officer of Whitestar Development, One Niagara, and Tourist Services.

(b)      From at least in or about April 2006 to in or about late July 2010, defendant SELVARAJ functioned as the chief financial officer of Tourist Services.  In that capacity, defendant SELVARAJ was responsible for, among other things, collecting rents and receipts, making bank deposits, and keeping the financial records of Tourist Services.  Further, defendant SELVARAJ carried out bank transactions for defendant PARLATO in ways intended to conceal and disguise the nature, the location, the source, the ownership and the

control of the funds, and the revenue and income the funds represented, in those transactions, from the Internal Revenue Service, among others.

(c)     From at least in or about April 2006 to in or about late July 2010, defendants PARLATO and SELVARAJ collected proceeds generated by the businesses that operated at the One Niagara Building, including the cash-basis parking lot and the tourist businesses, food vendors and tour operators that rented space in and at the One Niagara Building. During this time frame, these businesses paid proceeds to PARLATO and SELVARAJ or entities controlled by them.   However, defendants conducted their financial activities in ways intended to conceal and disguise the nature, the location, the source, the ownership, and the control of such proceeds. These proceeds should have been reported to and shared with defendant PARLATO's business partners in Tourist Services and One Niagara, and should have been reported timely to the Internal Revenue Service and others with an interest in the revenue generating activities at the One Niagara Building.

**Proceeds Generated at One Niagara Building from 2011 to 2017**

(d)     From in or about March 2011 to in or about 2017, defendants PARLATO and SELVARAJ continued to be involved with business activities at the One Niagara Building. Based on agreements defendant PARLATO made with P.G., defendant PARLATO was able to sell merchandise, collect rents from vendor operations located outside the One Niagara Building, and collect commissions from tour operators. In part, defendant SELVARAJ was responsible at times for collecting rents and receipts from the outside vendors, and for carrying out bank transactions for defendant PARLATO. However, defendants conducted their financial activities in ways intended to conceal and disguise the nature, the location, the

source, the ownership, and the control of the funds in those transactions, from the Internal Revenue Service and others. These monies should have been reported timely to the Internal Revenue Service and others with an interest in the revenue generating activities at the One Niagara Building.

(e)     From in or about 2011 to in or about 2012, defendants PARLATO and SELVARAJ, or entities controlled by them, were involved with businesses which sold retail merchandise at the One Niagara Building. During such time period, defendants PARLATO and SELVARAJ received proceeds from businesses operating at the One Niagara Building.

(f)     In or about 2013, defendant PARLATO had an agreement with P.G. that allowed defendant PARLATO to manage and collect all rents from the outdoor tenants at the One Niagara building in exchange for a flat rental fee paid to P.G. During such time period, defendants PARLATO and SELVARAJ, and entities controlled by them, received rents from businesses operating at the One Niagara Building.

(g)     From in or about 2014 to in or about 2015, defendant PARLATO had an agreement with P.G. that allowed defendant PARLATO to manage and collect a portion of the rents from the outdoor tenants.  During such time period, defendants PARLATO and SELVARAJ, or entities controlled by them, received rents from businesses operating at the One Niagara Building.

(h)     In or about 2016, defendant PARLATO had an agreement with P.G. which allowed defendant PARLATO to manage and collect all rents from the outdoor tenants, and required defendant PARLATO to share the proceeds equally with P.G. During such time period, defendants PARLATO and SELVARAJ, and entities controlled by them, received rents from businesses operating at the One Niagara Building.

(i)      In or about 2017, defendant PARLATO had an agreement with P.G. which allowed defendant PARLATO to manage and collect rents from certain of the outdoor tenants, and operate a retail business at the One Niagara Building. During such time period, defendants PARLATO and SELVARAJ, and entities controlled by them, received proceeds from businesses operating at the One Niagara Building.

**Other Proceeds Generated from 2011 to 2017**

(j)      From in or about 2011 to in or about 2017, defendants PARLATO and SELVARAJ received other proceeds, in addition to the revenue generating activities at the One Niagara Building, including from consulting or lobbying activities and monies related to a bar known as "Nifty Fifties" a/k/a 7710 Buffalo Ave. Inc.

(k)      Defendants PARLATO and SELVARAJ engaged in banking and business practices and conducted their financial activities in ways intended to conceal and disguise the nature, the location, the source, the ownership, and the control of the funds in those transactions, from the Internal Revenue Service and others.

**Use of Shell Entities & Bank Accounts**

(l)      On various occasions during the time frame relevant to this Superseding Indictment, defendants PARLATO and SELVARAJ established and used, and caused the establishment and use of, various shell entities. These shell entities were used for the purpose of concealing and disguising the nature, the location, the source, the ownership, and the control of the proceeds described in this Superseding Indictment from, among others, the Internal Revenue Service, L.R. and his entities, and others with an interest in the revenue

generating activities at the One Niagara Building. The shell entities included, among others: (1) Andrew Thomas, Inc.; (2) Dayton Ingersoll and Associates, Inc.; (3) Gold Field Consulting, Inc.;  (4) JF Anderson Consulting, Inc.; (5) JL Frost, Inc.; (6) Johnston and Peach, Inc.; (7) Niagara Frontier Development, Corp.; (8) Niagara Frontier Lending Corp.; (9) One Niagara Center, Inc.; (10) One Niagara Plaza, Inc.; (11) Parlato Development Inc.; (12) Robert Francis Development, Inc.; (13) Robert M. Wilson Vending and ATM Inc.; (14) Selvaraj, LLC; and (15) Williamstown Development Inc.

(m)     Defendants PARLATO and SELVARAJ also used and caused the use of various entities which were used to receive and transfer funds unrelated to their business purposes. These entities were used in part for the purpose of concealing and disguising the nature, the location, the source, the ownership, and the control of the proceeds described in this Superseding Indictment from, among others, the Internal Revenue Service, L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building. These entities included, among others: (1) Niagara Falls Reporter Inc., an entity established and caused to be established by defendant PARLATO; (2) Central Development Group Inc., an entity established and caused to be established by J.P., a person known to the Grand Jury, in or about December 2011; and (3) Select Development Corp., an entity established and caused to be established by J.P. in or about September 2008.

(n)     Defendants PARLATO and SELVARAJ also opened and caused the opening of at least 50 bank accounts, many of which were in the name of the shell entities, to conduct transactions designed to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds received by defendants PARLATO and SELVARAJ, and entities controlled by them from, among others, the Internal Revenue

Service, L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building.

**ATMs**

(o)     On various occasions up until in or about July 2010, defendants PARLATO and SELVARAJ took cash proceeds generated by the operations of Tourist Services, including the parking lot, and deposited them into ATMs controlled by the defendants thereby concealing such receipts and proceeds from the Internal Revenue Service, L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building.

**IOLA Accounts**

(p)     From in or about 2010 through in or about 2015, defendants PARLATO and SELVARAJ used multiple Interest on Lawyers Accounts ("IOLA accounts") to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds received by defendants PARLATO and SELVARAJ, and entities controlled by them from, among others, the Internal Revenue Service, L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building.

(q)     In New York State, an IOLA account is a bank account which is used by an attorney as repository for funds which belong to their clients.  Pursuant to the rules governing the conduct of attorneys in New York, only attorneys can serve as signatories on an IOLA account, and an IOLA account may only be used by attorneys as an account for the deposit of client funds held in a fiduciary capacity.

(r)     Notwithstanding the foregoing, on or about March 2, 2011, the defendant SELVARAJ, who was not an attorney, was added as a signatory to IOLA account ending in 4836 at First Niagara Bank in the name Frank Parlato IOLA Fund of the State of New York ("FN IOLA account") which account was maintained by an attorney whose identity is known to the Grand Jury ("the attorney").   On or about September 20, 2011, the defendant PARLATO, who was not an attorney, was added as a signatory on the FN IOLA account.

(s)     On or about September 26, 2011, the attorney and the defendants PARLATO and SELVARAJ opened an IOLA account ending in 8448 at Bank of America in the name New York IOLA Trust Accounts, Frank R. Parlato Trustee ("BOA IOLA account"), with the attorney, PARLATO, and SELVARAJ having signatory authority over the BOA IOLA account.

(t)     On or about March 2, 2011, the attorney and the defendant SELVARAJ opened IOLA account ending in 0606 at Key Bank in the name Frank R. Parlato IOLA Fund Attorney Escrow Account/IOLA ("KB IOLA account"), with the attorney and SELVARAJ having signatory authority over the KB IOLA account.   On or about September 6, 2011, defendant PARLATO was added as a signatory on the KB IOLA account.

**Failure to File Timely Federal Income Tax Returns**

(u)     In a further effort to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds received by defendants PARLATO and SELVARAJ, and entities controlled by them from, among others, the Internal Revenue Service, L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building, defendant PARLATO did not timely file his personal federal

income tax returns for 2006, 2007, 2008, 2009, 2010, 2011, and 2012; did not file his personal federal income tax returns for 2014, 2015, and 2016; and did not timely file federal tax returns for entities for which defendant PARLATO was the acting manager and Chief Operating Officer, specifically Whitestar Development, One Niagara, and Tourist Services for tax years 2006, 2007, 2008, 2009, and 2010.

(v)     Similarly, defendant SELVARAJ did not timely file her personal federal income tax returns for 2011, 2012, and 2013, and did not file her personal federal income tax returns for 2009, 2010, 2014, 2015, and 2016.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed by the defendants:

### Diversion of Proceeds Associated With Tourist Services (2009-2010)

1.     In or about April 2009, after the State of New York had issued a tax levy in or about January 2009, on a Tourist Services account ending in 7644 at M&T Bank, defendants PARLATO and SELVARAJ caused the account into which the revenues of Tourist Services were deposited to be changed from the aforementioned account ending in 7644, to an account ending in 0702 at M&T Bank in the name Whitestar Development Corp.

2.     In or about June 2010, defendants PARLATO and SELVARAJ caused the account into which the revenues of Tourist Services were deposited to be changed from an account ending in 0702 at M&T Bank in the name of Whitestar Development, to an account ending in 6737 at HSBC in the name of One Niagara Center, Inc.

**Creation of Certain Shell Entities & Their Bank Accounts**

3.      On or about March 18, 2008, defendant PARLATO established and caused to be established a shell entity, Dayton Ingersoll, Inc.

4.      On or about August 3, 2009, defendants PARLATO and SELVARAJ opened, and caused to be opened, a bank account ending in 6966 at Citizens Bank in the name of Parlato Development, Inc., a corporation previously established and caused to be established by the defendant PARLATO.

5.      On or about August 7, 2009, defendants PARLATO and SELVARAJ opened and caused to be opened a bank account ending in 6931 at Citizens Bank in the name of Dayton Ingersoll, Inc.

6.      On or about September 2, 2009, defendants PARLATO and SELVARAJ established and caused to be established a shell entity, Selvaraj, LLC.

7.      On or about September 4, 2009, defendants PARLATO and SELVARAJ opened, and caused to be opened, bank accounts ending in 4402 and in 2616 at the Bank of America in the name of Selvaraj, LLC.

8.      On or about September 22, 2009, defendants PARLATO and SELVARAJ opened, and caused to be opened, a Citizens Bank account ending in 6826 in the name Selvaraj, LLC.

9.      On or about September 23, 2009, defendant PARLATO established and caused to be established four shell entities: Andrew Thomas, Inc.; Robert Francis Development Inc.; Niagara Frontier Lending Corporation; and Niagara Frontier Development Corporation.

10.     On or about September 25, 2009, defendants PARLATO and SELVARAJ opened, and caused to be opened, bank accounts for shell entities as follows:

a.      Bank accounts ending in 6508 and in 6540 at Citizens Bank in the name of Andrew Thomas, Inc.;

b.      Bank account ending in 2894 at Bank of America in the name of Andrew Thomas, Inc.;

c.      Bank account ending in 6591 at Citizens Bank in the name of Robert Francis Development Inc.;

d.      Bank account ending in 4253 at Bank of America in the name of Robert Francis Development Inc.;

e.      Bank account ending in 6524 at Citizens Bank in the name of Niagara Frontier Lending Corporation;

f.      Bank account ending in 2593 at Bank of America in the name of Niagara Frontier Lending Corporation;

g.      Bank account ending in 4444 at Bank of America in the name Niagara Frontier Development Corp.; and

h.      Bank account ending in 6567 at Citizens Bank in the name Niagara Frontier Development Corp.

11.     On or about May 6, 2010, defendant PARLATO established and caused to be established a shell entity, One Niagara Center, Inc.

12.     On or about June 18, 2010, defendant PARLATO opened, and caused to be opened, a bank account ending in 6737 at HSBC in the name of One Niagara Center, Inc.

13.     On or about July 13, 2010, defendants PARLATO and SELVARAJ opened, and caused to be opened, a bank account ending in 2299 at M&T Bank in the name of One Niagara Center, Inc.

14.     On or about August 26, 2010, defendant PARLATO established and caused to be established a shell entity, JL Frost, Inc.

15.     On or about August 27, 2010, defendants PARLATO and SELVARAJ opened, and caused to be opened, a bank account ending in 6450 at First Niagara Bank in the name of JL Frost, Inc.

16.     On or about September 1, 2010, defendant PARLATO established and caused to be established two shell entities: JF Anderson Consulting, Inc. and Gold Field Consulting, Inc.

17.     On or about September 15, 2010, defendants PARLATO and SELVARAJ opened, and caused to be opened, a bank account ending in 6476 at First Niagara Bank in the name of JF Anderson Consulting, Inc.; and a bank account ending in 6484 at First Niagara in the name of Gold Field Consulting, Inc.

18.     On or about September 21, 2010, defendant PARLATO established and caused to be established a shell entity, Robert M. Wilson Vending and ATM.

19.     On or about October 6, 2010, defendants PARLATO and SELVARAJ opened, and caused to be opened, an investment account ending in 8398 at New England Securities Corp. in the name of Robert M. Wilson Vending and ATM.

**Use of Bank Accounts Associated with Shell Entities**

20.     On or about July 19, 2010, using a wire transmission, defendants PARLATO and SELVARAJ transferred, and caused the transfer, of approximately $400,000 from an account ending in 6737 at HSBC in the name of One Niagara Center, Inc. to the M&T account ending in 2299 in the name of One Niagara Center, Inc.

21.    On or about July 20, 2010, the defendant PARLATO deposited two checks totaling approximately $57,223 and payable to "One Niagara" to the M&T account ending in 2299 in the name of One Niagara Center, Inc.

22.    On or about September 9, 2010, using a wire transmission, defendants PARLATO and SELVARAJ transferred and caused the transfer of approximately $250,000 from the Citizens Bank account ending in 6591 in the name Robert Francis Development, Inc. to the FN IOLA account.

23.    On or about September 13, 2010, using a wire transmission, defendants PARLATO and SELVARAJ transferred and caused the transfer of approximately $100,000 from the Citizens Bank account ending in 6931 in the name Dayton Ingersoll, Inc. to the FN IOLA account.

24.    On or about September 14, 2010, using a wire transmission, defendants PARLATO and SELVARAJ transferred and caused the transfer of approximately $155,000 from the Citizens Bank account ending in 6591 in the name Robert Francis Development, Inc. to the FN IOLA account.

25.    On or about September 20, 2010, defendants PARLATO and SELVARAJ transferred and caused the transfer of:

    a.    Approximately $150,000 from the FN IOLA account to the First Niagara account ending in 6476 in the name of JF Anderson Consulting Inc.; and

    b.    Approximately $250,000 from the FN IOLA account to the account ending in 6484 at First Niagara in the name of Gold Field Consulting.

26.    On or about September 21, 2010, using a wire transmission, defendants PARLATO and SELVARAJ transferred and caused the transfer of approximately $125,000

17

from account ending in 6966 at Citizens Bank in the name Parlato Development, Inc., to the FN IOLA account.

27.    On or about September 23, 2010, defendants PARLATO and SELVARAJ transferred and caused to be transferred:

      a.   Approximately $158,627 from the Bank of America account ending in 2894 maintained by Andrew Thomas, Inc. to the Bank of America account ending in 4253 in the name Robert Francis Development;

      b.   Approximately $235,000 from Bank of America account ending in 4253 in the name Robert Francis Development to the FN IOLA account;

      c.   Approximately $80,068 from the Bank of America account ending in 4444 maintained by Niagara Frontier Development Corp. to the Bank of America account ending in 4253 in the name Robert Francis Development;

      d.   Approximately $125,000 from the FN IOLA account to the First Niagara account ending in 6476 in the name JF Anderson Consulting, Inc.

28.    On or about September 27, 2010, defendants PARLATO and SEVLARAJ transferred and caused to be transferred:

      a.   Approximately $125,529 from the Citizens Bank account ending in 6826 maintained by Selvaraj, LLC to the Citizens Bank account ending in 6508 maintained by Andrew Thomas, Inc.;

      b.   Approximately $168,650 from the Citizens Bank account ending in 6591 in the name Robert Francis Development to the Citizens Bank account ending in 6508 maintained by Andrew Thomas, Inc.;

    c.   Approximately $139,826 from the Citizens Bank account ending in 6524 maintained by Niagara Frontier Lending Corp. to the Citizens Bank account ending in 6508 maintained by Andrew Thomas, Inc.;

    d.   Approximately $125,486 from the Citizens Bank account ending in 6567 maintained by Niagara Frontier Development to the Citizens Bank account ending in 6508 maintained by Andrew Thomas, Inc.

29.    On or about September 28, 2010, using a wire transmission, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $685,426 from the Citizens Bank account ending in 6508 in the name of Andrew Thomas, Inc. to the FN IOLA account.

30.    On or about September 29, 2010, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $115,000 from the Bank of America account ending in 4402 maintained by Selvaraj, LLC to the FN IOLA account.

31.    On or about October 22, 2010, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $250,000 from the FN IOLA account to the First Niagara account ending in 6450 maintained by JL Frost, Inc.

32.    On or about November 23, 2010, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $257,500 from the First Niagara account ending in 6450 in the name JL Frost, Inc. to the Bank of America account ending in 4402 maintained by Selvaraj, LLC.

33.    On or about November 26, 2010, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $200,000 from the First Niagara

account ending in 6476 maintained by JF Anderson Consulting, Inc. to the FN IOLA account.

34.     On or about November 29, 2010, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $225,000 from the First Niagara account ending in 6484 maintained by Gold Field Consulting, Inc. to the Bank of America account ending in 2616 by Selvaraj, LLC.

35.     On or about January 11, 2011, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $10,000 from the FN IOLA account to the New England Securities Corp. investment account ending in 8398 in the name of Robert M. Wilson Vending and ATM.

36.     On or about March 30, 2011, the defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $109,000 from the Bank of America account ending in 2616 maintained by Selvaraj, LLC to a second Bank of America account ending in 4402 maintained by Selvaraj, LLC.

**Use of IOLA Accounts**

37.     On or about March 2, 2011, defendant SELVARAJ signed signature cards for two of the attorney's IOLA accounts, the FN IOLA and KB IOLA, thus becoming a non-lawyer signatory on two IOLA accounts.

38.     On or about August 12, 2011, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $250,000 from the FN IOLA account to the KB IOLA account.

39.     On or about September 6, 2011, defendant PARLATO signed a signature card for the attorney's KB IOLA account, thus becoming a non-lawyer signatory on the KB IOLA account.

40.     On or about September 20, 2011, defendant PARLATO signed a signature card for the attorney's FN IOLA account, thus becoming a non-lawyer signatory on the FN IOLA account.

41.     On or about September 26, 2011, defendants PARLATO and SELVARAJ signed a signature card for the attorney's BOA IOLA account, thus becoming non-lawyer signatories on the BOA IOLA account.

42.     On or about October 11, 2011, defendants PARLATO and SELVARAJ transferred and caused to be transferred approximately $250,000 from the FN IOLA account to the BOA IOLA account.

43.     On or about January 3, 2012, defendants PARLATO and SELVARAJ deposited and caused to be deposited a check in the amount of approximately $34,000 to the BOA IOLA account.

44.     On or about May 2, 2013, defendant PARLATO wrote and caused to be written check number 1022 in the amount of $50,000 from the BOA IOLA account as payment to lease outdoor space at the One Niagara Building.

45.     On or about May 15, 2013, defendant PARLATO wrote and caused to be written check number 1041 in the amount of $50,000 from the BOA IOLA account as payment to lease outdoor space at the One Niagara Building.

**Payments from Outside Vendors (2012-2017)**

46.     In or about 2012, defendants PARLATO and SELVARAJ deposited and caused to be deposited payments from outside vendors at the One Niagara Building into at least two bank accounts: (1) the BOA IOLA; and (2) Bank of America account ending in 2616 in the name of Selvaraj, LLC. Such deposit(s) included funds from B.O., Inc.

47.     In or about 2013, defendants PARLATO and SELVARAJ deposited and caused to be deposited payments from outside vendors at the One Niagara Building into at least three bank accounts: (1) FNB IOLA; (2) BOA IOLA; and (3) the Bank of America account ending in 2616 in the name of Selvaraj, LLC. Such deposit(s) included funds from C.T. and B.O., Inc.

48.     In or about 2014, defendants PARLATO and SELVARAJ deposited and caused to be deposited payments from outside vendors at the One Niagara Building into at least one bank account, the Bank of America account ending in 2616 in the name of Selvaraj, LLC. Such deposit(s) included funds from B.O., Inc.

49.     In or about 2015, defendants PARLATO and SELVARAJ deposited and caused to be deposited payments from outside vendors at the One Niagara Building into at least one bank account, the Bank of America account ending 9033 in the name of CHITRA SELVARAJ. Such deposit(s) included funds from P.G.

50.     In or about 2015, defendant PARLATO made and caused payment of approximately $10,000 from the Citizens Bank account ending in 5128 in the name Niagara Reporter, Inc. to Frank D'Augostino to rent space at the outside of the One Niagara Building.

51.     In or about 2016, defendant PARLATO and SELVARAJ deposited and caused to be deposited payments from outside vendors at the One Niagara Building into at least one

bank account, the M&T Bank account ending 6727 in the name Whitestar at 360 Operations, LLC, an entity belonging to P.G. P.G. allowed defendants PARLATO and SELVARAJ to use this account.

52.     From in or about May 2016 to in or about July 2016, M.R., a person known to the Grand Jury, gave defendants PARLATO and SELVARAJ cash collected from tenants and merchandise sales.

53.     In or about 2016, defendant PARLATO collected at least $9,000 in cash rental payments from D.C., a person known to the Grand Jury. These rental payments were not recorded on a spreadsheet of rental payments maintained by defendant PARLATO's employee M.R.

54.     In or about 2016, defendant PARLATO refused to share sales records from the outside operation at the One Niagara Building, causing P.G. to estimate sales for the purpose of preparing and filing New York State sales tax returns.

55.     On or about July 29, 2016, defendant PARLATO paid and caused payment of approximately $85,000 in cash to P.G. as part of P.G.'s share of the payments from the outside operation at the One Niagara Building, and simultaneously failed to provide any accounting documenting the total proceeds received.

56.     On or about September 16, 2016, defendant PARLATO paid and caused payment of approximately $100,000 in cash to P.G. as the remaining part of P.G.'s share of the payments from the outside operation at the One Niagara Building, and simultaneously failed to provide any accounting documenting the total proceeds received.

57.     In or about December 2016, defendant PARLATO provided approximately $15,000 cash to D.M., a person known to the Grand Jury, as partial payment for her work at an outdoor retail business at the One Niagara Building during the 2016 year.

58.     In or about December 2016, defendant PARLATO provided approximately $40,000 cash to D.M. and directed and caused her to deposit it to M&T Bank Account ending in 6727 maintained by Whitestar at 360 Operations LLC, in order for there to be sufficient funds in the account to make a payment due to O.T.F.

59.     In or about June and July 2017, C.T. paid at least $50,000 to defendant PARLATO. At defendant PARLATO's direction, the checks were made payable to Central Development Group Inc. and the checks were deposited to an account in the name of that entity.

**Other Payments**

60.     In or before August 2014, A.F., a person known to the Grand Jury, worked as a consultant and lobbyist for the benefit of the One Niagara Building. In or about August 2014, P.G. made a payment of $58,500 to the Niagara Falls Reporter related to this consulting and lobbying work by check drawn on an account in the name of Niagara Falls Center for Tourism, which contained a note in the memo section that the check was for "[A.F.] P.R. Consulting Agree."  On or about August 28, 2014, defendant PARLATO deposited and caused to be deposited this check into an account at Citizens Bank account ending in 4342 in the name of Niagara Falls Reporter, Inc.

61.     In or about October 2015, defendants PARLATO and SELVARAJ operated a bar known as "Nifty Fifties" a/k/a 7710 Buffalo Ave. Inc. Defendants PARLATO and

SELVARAJ paid and caused the payment of rent for the bar from an account at Citizens Bank ending 5128 in the name Niagara Reporter, Inc.

**All in violation of Title 18, United States Code, Section 371.**

## COUNTS 2 – 8

**(Wire Fraud)**

**The Grand Jury Further Charges That:**

1.      The allegations of the Introduction of this Superseding Indictment and Count 1 are realleged and incorporated by reference herein.

2.      Beginning in or about mid-2006 and continuing to in or about the end of August 2014, the exact dates being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendants, FRANK R. PARLATO, JR. and CHITRA SELVARAJ, did devise, and intend to devise, a scheme and artifice to defraud L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building, and to obtain money and property of L.R. and his entities, and others with an interest in the revenue generating activities at the One Niagara Building, by means of materially false and fraudulent pretenses, representations, and promises.

3.      It was part of the scheme and artifice that the defendants PARLATO and SELVARAJ received the gross rents from the various businesses that sublet space in the One Niagara Building and the receipts of the cash basis parking lot located adjacent to the One Niagara Building, and thereafter took steps to conceal those gross rents and parking lot receipts from L.R. and his entities and others with an interest in the revenue generating activities at the One Niagara Building.

4.      It was further part of the scheme and artifice that, despite having sufficient revenues to pay L.R. and his entities the monies due them pursuant to the Tourist Services Operating Agreement and despite having full knowledge of the financial condition of Tourist Services, the defendant PARLATO falsely represented, and caused to be falsely represented, to L.R. and his entities and others, that Tourist Services did not have sufficient revenues to pay L.R. and his entities monies due them pursuant the Tourist Services Operating Agreement.

5.      It was further part of the scheme and artifice that the defendants PARLATO and SELVARAJ, at times using interstate wire transmissions, diverted and secreted approximately $1,400,000 in revenue from Tourist Services, including approximately $910,000 in 2009 and approximately $552,000 in 2010, into and through bank accounts held in the names of the shell entities and the IOLA accounts in order to prevent L.R. and his entities and others, from knowing the nature, the location, the source, the ownership, and the control of the revenue from Tourist Services.

6.      On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendants, FRANK R. PARLATO, JR. and CHITRA SELVARAJ, for the purposes of executing the scheme and artifice, did transmit, and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals and sounds, that is, the wire transfer of funds set forth below for each count:

| Count | Date | Approximate Amount | Wire Transfer Origin Account and Name | Wire Transfer Deposited in |
|-------|------|--------------------|---------------------------------------|----------------------------|
| 2 | 7/19/10 | $400,000 | HSBC bank account ending in 6737 in the name One Niagara Center Inc. | M&T Bank account ending in 2299 in the name One Niagara Center Inc. |

| Count | Date | Approximate Amount | Wire Transfer Origin Account and Name | Wire Transfer Deposited in |
|-------|------|-------------------|--------------------------------------|---------------------------|
| 3 | 7/22/10 | $425,000 | M&T Bank account ending in 0165 in the name Parlato Development | Citizens Bank account ending in 6575 in the name Robert Francis Development |
| 4 | 9/9/10 | $250,000 | Citizens Bank account ending in 6591 in the name Robert Francis Development | FN IOLA account |
| 5 | 9/13/10 | $100,000 | Citizens Bank account ending in 6931 in the name Dayton Ingersoll & Associates, Inc. | FN IOLA account |
| 6 | 9/14/10 | $155,000 | Citizens Bank account ending in 6591 in the name Robert Francis Development | FN IOLA account |
| 7 | 9/21/10 | $125,000 | Citizens Bank account ending in 6966 in the name Parlato Development | FN IOLA account |
| 8 | 9/28/10 | $685,426.48 | Citizens Bank account ending in 6508 in the name Andrew Thomas, Inc. | FN IOLA account |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

## COUNTS 9 - 18

**(Engaging in Monetary Transactions in Property
Derived From Specified Unlawful Activity)**

**The Grand Jury Further Charges That:**

1.      The allegations of the Introduction and Counts 1 through 8 of this Superseding Indictment are realleged and incorporated by reference herein.

2.      On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendants, FRANK R. PARLATO, JR. and CHITRA SELVARAJ, did knowingly engage in, and attempt to engage in, the monetary transactions set forth below,

by, through and to financial institutions engaged in and the activities of which affected interstate and foreign commerce, in criminally derived property of a value of greater than $10,000, that is, the deposit, withdrawal, transfer and exchange of funds and monetary instruments as set forth below by, through and to the financial institutions set forth below, such property having been derived from  specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, and that while engaging in, and attempting to engage in, such monetary transactions, knew that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense:

| Count | Date | Approximate Amount | Wire Transfer Origin Account and Name | Wire Transfer Deposited in |
|---|---|---|---|---|
| 9 | 7/19/10 | $400,000 | HSBC bank account ending in 6737 in the name One Niagara Center Inc. | M&T Bank account ending in 2299 in the name One Niagara Center Inc. |
| 10 | 7/22/10 | $425,000 | M&T bank account ending in 0165 in the name Parlato Development | Citizens Bank account ending in 6575 in the name Robert Francis Development |
| 11 | 9/9/10 | $250,000 | Citizens Bank account ending in 6591 in the name Robert Francis Development Inc. | FN IOLA Account |
| 12 | 9/13/10 | $100,000 | Citizens Bank account ending in 6931 in the name Dayton Ingersoll Inc. | FN IOLA Account |
| 13 | 9/14/10 | $155,000 | Citizens Bank account ending in 6591 in the name Robert Francis Development Inc. | FN IOLA Account |
| 14 | 9/21/10 | $125,000 | Citizens Bank account ending in 6966 in the name Parlato Development  Inc. | FN IOLA Account |

| Count | Date | Approximate Amount | Wire Transfer Origin Account and Name | Wire Transfer Deposited in |
|-------|------|--------------------|----------------------------------------|-----------------------------|
| 15 | 9/23/10 | $235,000 | BOA account ending in 4253 in the name Robert Francis Development Inc. | FN IOLA Account |
| 16 | 9/28/10 | $685,426.48 | Citizens Bank account ending in 6508 in the name Andrew Thomas Inc. | FN IOLA Account |
| 17 | 3/30/11 | $160,125.93 | Bank of America account ending in 4402 in the name Selvaraj LLC. | Bank of Tampa for the benefit of New House Title LLC |
| 18 | 2/20/14 | $72,000 | FN IOLA Account | FN Bank account ending in 7139 in the name of Central Development Inc. |

**All in violation of Title 18, United States Code, Sections 1957 and 2.**

## FIRST FORFEITURE ALLEGATION

**The Grand Jury Alleges That:**

Upon conviction of the offenses alleged in Counts 1 through 8 of this Superseding Indictment, or any one of them, the defendant, FRANK R. PARLATO, JR., shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction, including, but not limited to:

### MONETARY AMOUNT

The sum of one million four hundred thousand dollars ($1,400,000) United States currency.

### FINANCIAL ACCOUNTS

a.      $131,901.65 United States currency seized from Bank of America account number XXXXXXX8448 in the name of New York IOLA Trust Accounts, Frank R. Parlato Trustee;

29

b.      $460,986.32 United States currency seized from First Niagara Bank account number XXXXXX4836 in the name of Frank Parlato IOLA Fund of the State of New York; and

c.      $407,250.23 United States currency seized from Key Bank account number XXXXXXXX0606 in the name of Frank R Parlato IOLA Fund Attorney Escrow Account/IOLA.

## REAL PROPERTY

The premises, buildings, appurtenances, improvements, and real property located at 29009 Geranium Drive, Big Pine Key, Florida, and more fully described in a deed filed and recorded in Official Records of the Clerk of the Court, Monroe County, Florida on April 8, 2011 in Book 2512 at Page 563.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

(1)     cannot be located upon the exercise of due diligence,
(2)     has been transferred or sold to, or deposited with, a third person,
(3)     has been placed beyond the jurisdiction of the Court,
(4)     has been substantially diminished in value, or
(5)     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of said defendant up to the value of the above property.

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

## SECOND FORFEITURE ALLEGATION

**The Grand Jury Further Alleges That:**

Upon conviction of the offenses alleged in Counts 9 through 18 of this Superseding

Indictment, or any one of them, the defendants, FRANK R. PARLATO, JR. and CHITRA

SELVARAJ, shall forfeit to the United States of America any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to:

## MONETARY AMOUNT

The sum of two million six hundred and seven thousand five hundred fifty-two dollars ($2,607,552) United States currency.

## FINANCIAL ACCOUNTS

a.    $131,901.65 United States currency seized from Bank of America account number XXXXXXX8448 in the name of New York IOLA Trust Accounts, Frank R. Parlato Trustee;

b.    $460,986.32 United States currency seized from First Niagara Bank account number XXXXXX4836 in the name of Frank Parlato IOLA Fund of the State of New York; and

c.    $407,250.23 United States currency seized from Key Bank account number XXXXXXXX0606 in the name of Frank R Parlato IOLA Fund Attorney Escrow Account/IOLA.

## REAL PROPERTY

The premises, buildings, appurtenances, improvements, and real property located at 29009 Geranium Drive, Big Pine Key, Florida, and more fully described in a deed filed and recorded in Official Records of the Clerk of the Court, Monroe County, Florida on April 8, 2011 in Book 2512 at Page 563.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

(1)    cannot be located upon the exercise of due diligence,
(2)    has been transferred or sold to, or deposited with, a third person,
(3)    has been placed beyond the jurisdiction of the Court,
(4)    has been substantially diminished in value, or
(5)    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above property.

**All pursuant to Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853(p).**

DATED:  Buffalo, New York, May 23, 2018.

JAMES P. KENNEDY, JR.
United States Attorney

BY:     S/ELIZABETH R. MOELLERING
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5872
Elizabeth.Moellering@usdoj.gov

BY:     S/JOHN D. FABIAN
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5819
John.Fabian@usdoj.gov

A TRUE BILL:

S/FOREPERSON