IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                                15-CR-149-A

FRANK R. PARLATO, JR. and
CHITRA SELVARAJ,

                         Defendants.

---

### GOVERNMENT'S REPLY TO DEFENDANT'S
### SUPPLEMENTAL RESPONSE CONCERNING INADMISSIBLE HEARSAY

The Court directed defendant Frank Parlato to identify which hearsay statements made by Larry Reger he seeks to introduce at trial. As described below, nearly all of the statements Parlato seeks to introduce are not only hearsay—and should be excluded on that basis alone—but they are entirely irrelevant to the charges in this case. Parlato cites no law establishing the relevance of Mr. Reger's statements, and he fails to identify why the statements are admissible under the residual exception to the hearsay rule. The Court should therefore grant the government's motion (Dkt. 194) to preclude Parlato from offering hearsay statements made by Mr. Reger.

**1. The government will agree to admit limited statements from Mr. Reger's 2009 civil deposition.**

Parlato seeks to introduce certain statements from Mr. Reger's 2009 civil deposition concerning the background of the One Niagara Building, Mr. Reger's relationship with Parlato, and the formation of various entities relevant to this case. The government does not expect many of these facts to be contested. The government will therefore work with defense

counsel to identify limited portions of Mr. Reger's 2009 civil deposition that the parties will agree to admit.

> **2. The remaining proposed statements are inadmissible because they have no relevance to the charges in this case.**

Parlato seeks to introduce a variety of hearsay statements that, in his view, "cast significant doubt upon any theory . . . that Mr. Reger was too unwitting, timid, shy, or inadequately represented by counsel, accountants, and other professionals to protect his own monetary and business interests." Br. at 13-14. *See id.* (arguing that testimony shows "that [Mr. Reger] was far from unsophisticated, unrepresented, impoverished, hapless, or helpless"); *id.* (observing that hearsay statements show that Reger "[d]id not trouble himself with minutia and details, and relied on his attorneys, accountants and others to address details"); *id.* at 13 ("This testimony demonstrates that Mr. Reger was not afraid to exercise his legal rights in business . . .") These statements, however, do not make any material fact more or less probable, *see* Fed. R. Evid. 401; they are, instead, designed to paint Mr. Reger as a sophisticated victim unworthy of protection by the federal fraud laws. The statements Parlato seeks to introduce are therefore irrelevant and should be precluded under Rule 401 regardless of whether they are hearsay.

The federal fraud statutes "protect[] the naïve as well as the worldly-wise." *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir. 2000) (quotation marks omitted). It is therefore well-settled that "[t]he focus of the language defining a scheme to defraud" in the fraud statutes "is on the violator, not the victim." *United States v. Drake*, 932 F.2d 861, 864 (10th Cir. 1991). *See also United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("[O]ne who preys

upon another's known idiosyncrasies cannot complain if he is held liable when he is successful in what he is endeavoring to accomplish.") (quotation marks omitted).

To that end, the Second Circuit has held that "a victim's negligence is not a defense under the federal fraud statutes." *United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017) (citing *United States v. Thomas*, 377 F.3d 232, 240-43 (2d Cir. 2004). This is for a simple reason: "[a] victim's negligence negates none of" the elements of wire fraud. *Id.*[1] The Second Circuit has likewise held that the opposite is true: a person is still a victim of fraud even if he "could have discovered based on external sources that the [defendant's] representations were false." *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007). *See also United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017) (quotation marks omitted) (noting that these rules are based on "the role of the ordinary prudence and comprehension standard in the materiality element" of the fraud statutes and that this standard is not intended "to grant permission to take advantage of the stupid or careless"); *United States v. Falkowtiz*, 214 F. Supp. 2d 365, 382 (S.D.N.Y. 2002) (noting that "situations may arise in which a highly sophisticated person may be taken in a scheme that may not necessarily deceive one less discerning who just may happen to be better informed"). With this standard in mind, many of the hearsay statements Parlato seeks to introduce are inadmissible because they do not make "more or less probable" any fact that "is of consequence" in this case. Fed. R. Evid. 401.

First, Parlato seeks to introduce a variety of statements showing that Mr. Reger was not familiar with many of the day-to-day details of his businesses because, among other things, he relied on accountants, lawyers, and other assistants. (Br. at 11-12, 14-15, 17-18, 21,

---

[1] "The essential elements of mail and wire fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails or wires to further the scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (quotation marks and brackets omitted).

3

26-27). Parlato does not identify the relevance of these statements, but it appears that he seeks to introduce them to suggest either (1) that Mr. Reger could not have been defrauded because he did not pay attention to details; or (2) that if there was fraud, Mr. Reger's assistants would have discovered it.

This testimony is inadmissible under either theory. Both theories are premised on Mr. Reger's "idiosyncrasies," *Svete*, 556 F.3d at 1165, and are therefore irrelevant to a crime that focuses "on the violator, not the victim." *Drake*, 932 F.2d 861. Whether Mr. Reger relied on a team of assistants does not make "more or less probable," Fed. R. Evid. 401, any of the elements of the crimes with which Parlato is charged. Parlato's inability to show the relevance of these statements underscores why they are inadmissible.

Second, Parlato seeks to introduce testimony suggesting that Mr. Reger "understood he could exercise his rights pursuant to the Tourist Services operating agreement." Br. at 19. Once again, however, Parlato fails to identify the relevance of this information. The fact that Mr. Reger did not exercise his self-help rights does not make any "fact of consequence" "more or less likely." Fed. R. Evid. 401. This is, instead, simply a variation of testimony suggesting that Mr. Reger was too sophisticated to be defrauded; the theory appears to be that if Mr. Reger were truly concerned about Parlato's conduct, he would have filed a lawsuit.

This testimony, however, is irrelevant for the same reasons stated above. A defendant is not absolved of criminal fraud liability simply because the victim could have (but chose not to) sue the defendant. Mr. Reger may have had any number of reasons for not seeking to enforce his legal rights; it may not have been practical to do so, or he simply may not have known to exercise his legal rights because he was unaware that he was being defrauded. That uncertainty, however, illustrates why this testimony is irrelevant: it improperly focuses on the

4

victim, rather than the defendant. *See also Falkowitz*, 214 F. Supp. 2d at 380 ("Artifice designed to deceive would be no less fraudulent whether in devising it the swindler had in mind mulcting the sophisticate or the naïve; the frail or careless as well as the most discerning.") It is therefore unsurprising that Parlato cites no case for the proposition that a person is not guilty of fraud if the victim chose to not help himself.

### 3. The proposed statements are inadmissible under Rules 804(b)(1) and 807.

Parlato does not dispute that the statements he seeks to introduce are inadmissible under Rule 804(b)(1) because the government was not a party to the prior proceedings. *See United States v. Peterson*, 100 F.3d 7 (2d Cir. 1996) (concluding that Rule 804(b)(1) did not allow the introduction of testimony from an earlier state criminal trial because the "the United States, against which [the defendant] sought to offer his prior testimony, was not a party to the proceedings before the state grand jury").

Parlato therefore seeks to admit Mr. Reger's statements under the residual hearsay exception contained in Rule 807.[2] The residual hearsay exception allows a court to admit otherwise-inadmissible hearsay if (1) "the statement is supported by sufficient guarantees of trustworthiness . . . after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and (2) "it is more probative on the point

---

[2] Some of the statements Parlato seeks to introduce contain multiple levels of hearsay. For example, Parlato seeks to introduce a statement made by Mr. Reger that itself introduces several statements made by Parlato. *See* Br. at 17. Even if the first layer of hearsay—Mr. Reger's out of court statements— were admissible, the second level of hearsay—Mr. Reger's statements about what Parlato said—is not. The hearsay exception embodied in Rule 801(d)(2) does not allow a defendant to offer his own out of court statements into evidence. The Rule only allows admission by a party opponent to be "offered against" the speaker. *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (defendant cannot introduce his own statement because it is inadmissible hearsay). Thus, Parlato may not offer his own out of court statements, either directly or by way of hearsay. If he wishes to introduce evidence of this sort, he must testify.

for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a).[3] These conditions must be "construe[d] . . . narrowly so that the residual exception does not swallow the rule against hearsay." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 583 (7th Cir. 2019) (quotation marks omitted). Particularly in light of its narrow application, Parlato has not shown that either of these conditions apply.

### a. Parlato has not shown that Mr. Reger's statements are supported by sufficient guarantees of trustworthiness.

#### i. The 2009 civil deposition

Parlato has not shown that the statements he seeks to introduce from Mr. Reger's 2009 civil deposition are "supported by sufficient guarantees of trustworthiness . . . after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement." Fed. R. Evid. 807(a)(1). In this regard, it is critical to consider the timing and source of this testimony: It was given in 2009—in the *middle* of the alleged conspiracy to defraud Mr. Reger—when Mr. Reger and Parlato were co-defendants in a civil lawsuit. Indeed, as Parlato notes, "Mr. Reger and his entities . . . through counsel, joined Mr. Parlato in a common defense against allegations of fraud." Br. at 9. It is therefore hardly surprising that many of the statements Parlato seeks to introduce from this deposition are favorable to him: the deposition predates this investigation; it was given at a time when Mr. Reger thought that his interests were aligned with Parlato's; and it was not subject to cross-examination by a party, such as the government, with both the facts and the motive to put

---

[3] Parlato's motion cites a now-outdated version of Rule 807. The Rule was amended in 2019 "to fix a number of problems that the courts have encountered in applying it." 2019 Adv. Comm. Note to Fed. R. Evid. 807.

Mr. Reger's testimony in context. *See United States v. Darwich*, 337 F.3d 645, 659-60 (11th Cir. 2003) ("Without proper cross-examination, the statements of [the declarants] cannot be deemed to have 'equivalent circumstantial guarantees of trustworthiness.'") Thus, although Mr. Reger's 2009 deposition testimony was made under oath, the "circumstances under which it was made" undermine its trustworthiness.

### ii.     The 2015 trial testimony

Mr. Reger's 2015 trial testimony similarly lacks sufficient guarantees of trustworthiness that would satisfy the first prong of Rule 807. Making this assessment requires the Court to review the transcript of Mr. Reger's testimony in its entirety. Doing so makes plain that "the totality of circumstances under which" the testimony was given, Fed. R. Evid. 807(a)(1), are far from trustworthy. Mr. Reger's testimony was offered in response to questioning by a *pro se* litigant who was entirely unfamiliar with the legal system, and for whom English appeared to be a second language. The questioning was meandering, poorly-focused, oddly-phrased, and had to be heavily guided by the presiding judge. Questions were frequently interrupted by not only objections but by the questioner's attempts to either argue with the witness or offer his own testimony.

Thus, even if Mr. Reger's testimony was given under oath, his testimony must be viewed alongside the questions he was answering. Doing so shows that Mr. Reger's answers are far from the sort of trustworthy statements that the residual exception sometimes allows a court to admit. Indeed, the transcript suggests that Mr. Reger was sometimes confused by the questioner's odd phrasing and oftentimes heavily-leading questions. *See, e.g.*, Def. Ex. M at 54:1-2 ("Witness: Your Honor, I don't quite understand him. What's the question."); *id.* at 59:4-9 (objection by counsel for defendants noting that questioner is "purposefully leading

this question in a direction that doesn't take into account what he knows to be the facts of this case"). This was unsurprising: after the questioner asked the presiding judge "when [a] document will become evidence?," the questioner stated: "Oh, I didn't know that. First time I see trials [sic]." Def. Ex. M at 25:22 – 26:4. *Id.* at 81:6-9 ("I have ways how to [refresh the witness's memory] but because I don't know the laws here I will have to speak about the way of you put evidence, how you put evidence, all these issues . . .") Moreover, Mr. Reger testified that he learned that he would be called to testify just one day earlier and that he "just had some conversations with [his] attorneys" to prepare. *Id.* at 75:14-25. Mr. Reger's testimony cannot, then, give the Court confidence that he understood what he was being asked or that he was fully prepared to offer complete testimony. This is not a trustworthy source of evidence and should be precluded.

### b. Parlato has not shown that the statements are more probative than other evidence he can obtain through reasonable means.

Mr. Reger's testimony from his 2009 deposition and 2015 trial is also inadmissible under Rule 807 because Parlato has not shown that the statements he seeks to introduce are "more probative on the point for which it is offered than any other evidence that [he] can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2).

The Court should preclude Mr. Reger's statements under Rule 807(a)(2) for two related reasons. First, Parlato has "made no showing that reasonable efforts could not have produced a witness with personal knowledge of" the facts he seeks to offer through Mr. Reger's hearsay testimony. *United States v. Scrima*, 819 F.2d 996, 1000-01 (11th Cir. 1987). *See also, e.g.*, *Burton*, 934 F.3d at 583-84 (noting that "through 'reasonable efforts,' [plaintiff] could have obtained the sworn deposition or in-court testimony of [declarant] or another [bank]

representative"). Indeed, nothing in Parlato's motion suggests that he has taken steps to secure this evidence through other means. That is alone a sufficient basis to deny his request.

Second, and relatedly, Parlato cannot satisfy the second prong of Rule 807 because the government expects to call numerous witnesses—including many of the individuals who worked with and for Mr. Reger—who can testify to the same facts that Parlato seeks to introduce through Mr. Reger's testimony. "[O]ther evidence," within the meaning of Rule 807(a)(2), can include testimony from a witness who knew the same facts as a deceased witness. *See Katona v. Federal Exp. Corp.*, No. 95 Civ. 10951(JFK), 1998 WL 126059, at *4 (S.D.N.Y. Mar. 19, 1998) (noting that this prong of the residual hearsay exception did not apply where, in a car accident case, the decedent driver "had a passenger in the car . . . who witnessed the accident," and where the plaintiff "could easily have obtained an affidavit" from the passenger). *See also United States v. Daneshvar*, 925 F.3d 766, 777-78 (6th Cir. 2019) (noting that residual exception did not allow defendant to introduce email where the point the defendant sought to make with the email "could have been, and in fact was, made through the witnesses at trial"). There are many witnesses—many of whom the government intends to call—who could offer the same testimony that Mr. Reger gave. Those witnesses include:[4]

- Gordon Reger – Owner, Reger Holdings LLC
- Doug Szalasny – Former Controller, Reger Entities
- James Cornell – Business Consultant for Reger Entities
- Peter Bartz – CPA who performed accounting work for Reger/Reger Entities
- Gregory Photiadis – Attorney for Larry Reger/Reger Entities

If appropriate and relevant, Parlato can cross-examine these witnesses to elicit the same evidence he seeks to obtain through Reger's hearsay statements. This evidence is far

---

[4] If the government later decides not to call one of these witnesses, Parlato can subpoena the witness. If the witness is otherwise unavailable, the parties can revisit whether certain, limited parts of Mr. Reger's testimony should be admitted to help prove discrete points.

more probative of the facts Parlato seeks to offer than the hearsay testimony of a man who did not appear to know many details of his businesses. As Parlato acknowledges, Mr. Reger was typically not involved in the day-to-day activities of his business; rather, his accountants and attorneys were. Those individuals are therefore far more likely to have probative evidence addressing the facts Mr. Parlato seeks to introduce.

### 4. Mr. Reger's 2015 trial testimony is not admissible to draw the negative inference that he was not defrauded.

Parlato also seeks to introduce Mr. Reger's 2015 trial testimony in its entirety to prove that Mr. Reger was not defrauded, all on the theory that the 2015 trial testimony post-dated Mr. Reger's grand jury testimony. Parlato therefore seeks to introduce the 2015 testimony to prove a negative: that Mr. Reger did not spontaneously testify that he was defrauded by Parlato. *See* Br. at 26 ("Nowhere does Mr. Reger say 'And Frank Parlato stole a bunch of money from me,' . . . or any words to that effect in the entirety of this 2015 testimony that post-dated his grand jury testimony.") Parlato, however, does identify any Rule of Evidence that would make Mr. Reger's 2015 testimony admissible for this novel purpose.

As an initial matter, to the extent that Mr. Reger's 2015 testimony is hearsay if offered for this purpose, Parlato does not show how, under Rule 807, the testimony is "supported by sufficient guarantees of trustworthiness . . . after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement." Fed. R. Evid. 807(a)(1). As described above, Mr. Reger's 2015 testimony was given in response to rambling and oftentimes incoherent questions from a *pro se* litigant for whom English appeared to be a second language. Even if Mr. Reger were inclined to spontaneously testify that Parlato did not defraud him, it is unclear when or how he could have done so given the difficulty he surely

10

had in simply trying to understand the questions that were asked of him. Mr. Reger's testimony therefore lacks a "sufficient guarantee[] of trustworthiness," Fed. R. Evid. 807(a)(1), particularly when offered for such a fundamental question as whether he was defrauded.

Second, Mr. Reger's 2015 testimony is not relevant to this point. It does not make "more or less probable," Fed. R. Evid. 401, whether Parlato defrauded Mr. Reger because Mr. Reger was *never asked* whether Parlato defrauded him.

Third, admitting Mr. Reger's 2015 testimony for this purpose would violate Rule 403. Whatever minimal probative value there might be to inferring a negative from Mr. Reger's 2015 testimony—and Parlato identifies none—that value would be substantially outweighed by the confusing and misleading nature of the testimony. There could be any number of reasons why Mr. Reger did not spontaneously announce that Parlato had defrauded him: it could be, for instance, that on 24 hours' notice, he did not recall the specifics of what he had learned in the grand jury, particularly for a company that was just one part of his holdings; he may have thought that making such a spontaneous claim of fraud would be improper, inconsiderate, or contemptuous; or he could have chosen not to do so for other reasons. The point is that we do not—and cannot—know. To ask the jury to draw the inference Parlato seeks to draw would invite ungrounded speculation, made even more unhelpful (and more prejudicial to the government) by the incoherent nature of much of the 2015 testimony. Parlato cannot, then, introduce Mr. Reger's 2015 testimony for this point.

**5. Statements made by Mr. Reger's attorney are inadmissible**

Parlato seeks to introduce statements by Mr. Reger's longtime attorney, Gregory Photiadis, suggesting that Mr. Reger was not defrauded. Specifically, Parlato seeks to introduce a letter from Mr. Photiadis to the United States Attorney, which urged the government to not charge Parlato because, according to the letter, "it is the position of [Mr. Reger's] family—who now owns his Niagara Falls interests—that [Mr. Reger] was neither cheated nor defrauded by Parlato." A copy of the letter is attached as Exhibit A.

These statements, however, are not "supported by sufficient guarantees of trustworthiness . . . after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement." Fed. R. Evid. 807(a)(1). After Mr. Photiadis provided this letter, █████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

Moreover, when presented with the letter on a later date, Mr. Photiadis stated that he did not "think that's true" and that he had signed the letter (1) based on a request from Parlato's attorney, who told Mr. Photiadis that the letter would make "[this] case go away";

---

[5] ████████████████████████████████████████████████████████

12

and (2) because he was worried about the economic harm that might come to Mr. Reger's companies from being identified as a victim of fraud.[6]

Under these circumstances, Mr. Photiadis's letter purporting to recount Mr. Reger's position is from a trustworthy source of evidence. It was ████████████████████████████████████████████████████████████████████████████████████████████. There is therefore little guarantee that the letter is an objective statement of Mr. Reger's beliefs; it is, instead, an advocacy document written by an unknown person whose primary goal was to prevent Parlato from being charged with fraud. This is not "trustworth[y]," Fed. R. Evid. 807, evidence and should be excluded. *Cf. Darwich*, 337 F.3d at 660 ("[T]o ensure 'equivalent circumstantial guarantees of trustworthiness' in the context of admitting grand jury testimony under the residual hearsay exception, [another court of appeals] listed the important factors, including: the declarant's relationship with both the defendant and the government, the declarant's motivation to testify before the grand jury, the extent to which the testimony reflects the declarant's personal knowledge, whether the declarant has ever recanted the testimony, and the existence of corroborating evidence available for cross-examination.") (quotation marks and emphasis omitted).

In any event, to the extent that Parlato has satisfied the first prong of Rule 807, he does not (and cannot) "show[] that reasonable efforts could not have produced a witness with personal knowledge of" the facts he seeks to offer through Mr. Photiadis' hearsay testimony. *Scrima*, 819 F.2d at 1000-01. This is because he may call Mr. Photiadis if the government does not do so.

---

[6] A memorandum of this interview was provided to defense counsel on June 8, 2021.

13

### 6. Excluding hearsay evidence does not infringe on Parlato's right to present a defense.

Finally, Parlato argues that precluding hearsay evidence would deny him his right to present a defense. *See* Dkt. 205 at 6-7. This argument is not persuasive.

A criminal defendant has a right to have "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Indeed, the Due Process Clause, protects a defendant's "right to present the defendant's version of the facts . . . to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). This right, however, is not without limits, and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). Thus, although a criminal defendant has a right to tell the jury his version of the facts, "[i]t does not follow . . . that a criminal defendant has a right to offer evidence that is irrelevant to the [g]overnment's charges." *United States v. Thompson*, 178 F. Supp. 3d 86, 91 (W.D.N.Y. 2016). Moreover, it has long been settled that the Constitution does not give a defendant an "unfettered right to offer testimony that is incompetent . . . or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). In other words, the Due Process Clause "does not give a criminal defendant the right to introduce irrelevant evidence." *Thompson*, 178 F. Supp. 3d at 91. Thus, Mr. Reger's testimony is not admissible simply because Parlato thinks it is helpful to his defense; rather, he must show—as any other criminal defendant would—that it is admissible under the Rules of Evidence. *See, e.g.*, *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) ("[W]e have recognized that state and federal lawmakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.") (quotation marks omitted).

## **CONCLUSION**

For the reasons stated above, as well as in the government's motion (Dkt. 194) and reply (Dkt 213), the Court should preclude prior statements and testimony of Lawrence Reger.

DATED: Buffalo, New York, July 14, 2022

TRINI E. ROSS
United States Attorney

BY: */s/ MICHAEL DiGIACOMO*
MICHAEL DIGIACOMO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5885
Michael.DiGiacomo@usdoj.gov

BY: */s/ CHARLES M. KRULY*
CHARLES M. KRULY
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5816
Charles.Kruly@usdoj.gov