IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.  15-CR-149-RJA

FRANK R. PARLATO, JR.,

Defendant.

---

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Frank Parlato admitted that he did not pay nearly $400,000 in taxes. Dkt. 294 (Plea Agreement) ¶ 4(e). Yet his sentencing memorandum spends nearly 30 pages addressing, and attempting to excuse, a non-issue concerning a management dispute at the One Niagara Building in Niagara Falls. Parlato never questions—nor could he—that he failed to report substantial income. Nor does he dispute that he has openly flaunted his disdain for the IRS. For these and the other reasons set forth below, the government requests that the Court impose a Guideline sentence of 24 months' imprisonment.

**A. Parlato has regularly defied his obligation to pay taxes and has encouraged others to do the same.**

"Tax offenses represent an especially damaging category of criminal offenses, which strike at the foundation of a functioning government." *United States v. Zukerman*, 897 F.3d 423, 428 (2d Cir. 2018) (brackets and quotation marks omitted) (quoting and affirming district court decision). The Court's sentence must therefore do more than just punish Parlato; it must also reflect the seriousness of tax crimes, "promote respect for the tax laws," and it must deter others who would be tempted to not report substantial income to the IRS. U.S.S.G. § 2T1.1, Intro. Cmt. Because "criminal tax prosecutions are rare," "general deterrence occupies an

especially important role in criminal tax offenses." *United States v. Park*, 758 F.3d 193, 201 (2d Cir. 2014). *See also* U.S.S.G. § 2T1.1, Intro. Cmt. (noting the "limited number of criminal tax prosecutions relative to the estimated incidence of such violations"). In other words, "[w]ithout a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path." *United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010). As courts have long recognized, deterrence is the "animating policy" of the tax Guidelines. *United States v. Lewis*, 93 F.3d 1075, 1081 (2d Cir. 1996).

The need to send a message is particularly important in this case. Parlato's years-long pattern of disdain for the IRS speaks for itself:

- Parlato not file his personal federal tax returns for tax years 1997 – 2004;
- Parlato did not file his personal federal tax returns for tax years 2005 – 2007 until 2008;
- Parlato did not file his personal federal tax returns for tax years 2008 – 2010 until 2013—after he learned that he was under investigation in this case;[1]
- Parlato did not file his personal federal tax returns for tax years 2011 – 2012 until 2014.

The fact that Parlato eventually filed some (but not all) of his taxes does not weaken the strength of this evidence. Rather, evidence that Parlato ultimately filed some returns is as "indicative of an intent to evade the tax system" as total non-payment. *United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998). *See also id.* ("As a simple matter of logic, [defendant's] failure to file state or federal returns for either himself or his corporations until told to do so by the IRS is indicative of an intent to evade the tax system.")

---

[1] *See* Frank Parlato, Jr., *Being Under Investigation Might Be a Good Thing*, Niagara Falls Reporter (Jan. 12, 2012), *available at* https://niagarafallsreporter.com/parlato1.10.12.html ("I found out last week that there is a pretty good chance that I am 'under investigation' by the FBI and IRS").

Parlato seeks to minimize this pattern of tax evasion by claiming that defrauding the IRS is "morally reprehensible." Dkt. 324 at 40. The evidence, however, shows that this statement is not a true reflection of Parlato's beliefs; it is, instead, an after-the-fact change in tune for a man who is now standing before a federal judge facing sentencing.

The Court does not need to take the government's word that Parlato has a dangerously-flippant attitude towards taxes. Parlato's own words speak for themselves: In a blog post he wrote in support of jury nullification *after* he was indicted in this case, Parlato quoted a comedian to "make[] [Parlato's] point": As Parlato wrote, "'If you take jury duty and it's . . . any kind of IRS bullshit, . . . you say "not guilty."'" Ex. A.[2] These are not the words of a man who believes that not paying his taxes is "morally reprehensible." These are, instead, the words of a man who views tax evasion as one's civic duty. This dangerous and lawless attitude is exactly why downward variances are generally inappropriate in tax cases. The Court's sentence must send a message. Imposing a term of probation does not send that message.

Nor is Parlato's failure to pay his taxes an isolated incident. It is instead part of a pattern of defying tax authorities. For example, when Parlato managed the One Niagara Building in Niagara Falls, he deposited the building's revenues into an account at M&T Bank. *See* PSR ¶ 57. In January 2009, however, New York State issued a tax levy against the account to recover tens-of-thousands of dollars in unpaid sales taxes. Rather than learning his lesson, Parlato played a shell game. He first closed the M&T account in April 2009. *Id.* Shortly thereafter, he opened a different M&T account into which he began depositing revenue from the One Niagara Building. *Id.* Over the next year, Parlato again failed to file and report sales

---

[2] This was one of a series of blog posts in which Parlaot strenuously advocated jury nullification. *See* Dkt. 165.

tax of approximately $77,000, even though New York had, months earlier, levied on a different account.

This is classic tax evasion. This is not simply a case, then, as Parlato would have it, involving failure to file a form with the IRS. As Parlato admitted in his plea agreement, he failed to report nearly $400,000 in income. Parlato knew he could not dodge taxes, yet he did so. He played shell games to hide his revenue. And he openly encouraged others to commit crimes.

This is not a case worthy of a downward variance. To the contrary, the facts set forth above show why a Guideline term of imprisonment is necessary to comply with the purposes of sentencing. Section 3353(a)(2)(A) requires the Court's sentence to "promote respect for the law," and § 3553(a)(2)(B) requires the sentence to "afford adequate deterrence to criminal conduct." A non-jail sentence for a defendant who flouts his tax obligations does not promote respect for the law; it instead mocks the law. And a non-jail sentence similarly does not deter others from not reporting substantial income.

### B. A Guidelines sentence of imprisonment is appropriate.

Parlato attempts to deflect attention from his tax crimes by characterizing himself as a "hero." Dkt. 324 at 8. This overstates what Parlato did in Niagara Falls: he filed in a hole in the ground, covered it with a parking lot, and then, for several years, helped manage a building that offered sales space for food vendors and souvenir shops. In Parlato's telling, his effort at revitalizing part of Niagara Falls is worthy of a non-Guideline sentence. But as the Guidelines recognize, "[c]ivic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.11. Allowing a defendant to use his perceived prominence in the

community to excuse a crime is antithetical to an impartial system of justice. Parlato should not be sentenced differently because he drops certain names or managed a business; he should be sentenced the same as any other defendant who evaded the IRS for years.

Parlato also claims to be a good Samaritan, but his recent actions show that that claim is false. In December 2021, Parlato's live-in girlfriend was encountered by Monroe County, Florida Sheriff's Deputies. That encounter was captured on the deputies' body-worn cameras.[3] According to the police report—which summarizes what is shown in the camera footage—Parlato's girlfriend "appeared to be very frightened and afraid, crying, sobbing, shaking and trembling and not being able to communicate with [officers] effectively." Parlato's girlfriend was asked "what happened and she appeared to be paralyzed by fear and would repeatedly say that nothing happened and did not want anyone to get in trouble. . . . After about approximately 15 minutes, she informed [officers] that her boyfriend, Frank Parlato, and her have been in a romantic relationship and have been living together for the past two months. She stated that they got into an argument and he had slapped and grabbed her, took her cell phone, and would not let her leave the house. The injuries [the officer] observed were red marks on her face around the left eye which appeared that she had been slapped, a small abrasion with dried blood behind her left ear, and red marks on her arms and wrists which appeared as if someone had grabbed her forcefully. [Parlato's girlfriend] stated that she tried to leave the house but [Parlato] forcibly held her against her will by grabbing her by the arms and would not leave her leave, and took her cell phone preventing her from calling law enforcement or [paramedics]."

---

[3] The government has previously provided defense counsel with body-camera footage documenting law enforcement's encounter with the Victim. The government can provide this video to the Court upon request.

5

State charges were ultimately dismissed because Parlato's girlfriend declined to cooperate with law enforcement. But the relevant facts are not in dispute, and the victim's contemporaneous report to law enforcement is recorded on video: Parlato assaulted his girlfriend because he believed that she embarrassed him; he left her with multiple injuries; and he then escaped punishment, no doubt by convincing the victim that she should not press charges. It is a "longstanding principle" that it is "'[h]ighly relevant—if not essential" for a sentencing judge to have "the fullest information possible concerning the defendant's life and characteristics.'" *United States v. Watts*, 519 U.S. 148, 151-52 (1997) (per curiam) (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). This has long been understood to include "past criminal behavior which did not result in a conviction." *BMW of North Am. v. Gore*, 517 U.S. 559, 573 n. 19 (citing *Williams*, *supra*). Title 18, United States Code, Section 3661 "codifies th[is] longstanding principle." *Watts*, 519 U.S. at 151. The Court is not, then, sentencing Parlato merely for tax crimes that occurred several years ago.

Finally, Parlato claims that he has received "just punishment" from the fact that he "has been under indictment and living with the threats from the allegations." Dkt. 324 at 42. As an initial matter, the goals of punishment and deterrence are not served by the mere fact that a defendant is charged with a crime; if that were true, imprisonment would never be appropriate. But more importantly, Parlato cannot use the age of this case as a mitigating fact. Parlato was indicted in November 2015. The case was ready for trial approximately 20 months later, in July 2017. Trial was then scheduled for March 2018. In the course of preparing for trial, however, the government learned that Parlato had engaged in similar conduct through 2016, even *after* he knew he was under investigation and even *after* he had been first indicted. *See* PSR ¶ 24. That caused the government to continue investigating

6

Parlato's conduct and ultimately seeking a superseding indictment. Years of additional delay ensued in scheduling a trial date, often over the government's objection. *See* May 13, 2019 Minute Entry; Dkt. 220; June 11, 2021 Minute Entry.[4]

It is unjust to allow a defendant to use the age of a case to justify a non-Guideline sentence when *the defendant* is the principal reason for that delay. Doing so only incentivizes a defendant to delay his case as long as possible.

\*   \*   \*

The Sentencing Guidelines recommend a sentence of 18-24 months' imprisonment. Although the Guidelines are advisory, the court "'must consult the Guidelines and take them into account when sentencing.'" *Molina-Martinez v. United States*, 578 U.S. 189, 193 (2016) (quoting *United States v. Booker*, 543 U.S. 220, 264 (2005)). If a sentencing court chooses to impose a non-Guideline sentence, it must "say why [it] is doing so, bearing in mind . . . that 'a major [variance] from the Guidelines should be supported by a more significant justification than a minor one." *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)) (editorial marks omitted). This standard reflects the fact that, even after *Booker*, the Guidelines "anchor . . . the district court's [sentencing] discretion." *Peugh v. United States*, 569 U.S. 530, 549 (2013).

Parlato has offered no reason that would justify a variance below the Guidelines range. His sentencing memorandum is devoted almost entirely to attacking a non-issue, and he fails to address his flippant and routine failure to pay taxes. A Guideline sentence is required not only to punish, but to deter would-be tax dodgers; it is all too easy to do what Parlato did for

---

[4] The government consented to an adjournment of several months at the beginning of the COVID-19 pandemic.

years and ignore the IRS. The fact that tax evasion like Parlato's is so simple to accomplish means that "a real possibility of imprisonment" is necessary to ensure that "a wavering would-be evader . . . choose[es] the straight-and-narrow." *Engle*, 592 F.3d at 502. Only a Guidelines sentence of imprisonment accomplishes that goal.

DATED: Buffalo, New York, June 23, 2023.

TRINI E. ROSS
United States Attorney

BY: *CHARLES M. KRULY*
CHARLES M. KRULY
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5838
Charles.Kruly@usdoj.gov

BY: *MICHAEL DIGIACOMO*
MICHAEL DIGIACOMO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5838
Michael.DiGiacomo@usdoj.gov