UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

                                  Case No.: 1:15-cr-00149

FRANK R. PARLATO, JR., and
CHITRA V.SELVARAJ,

                Defendants.

---

## DECLARATION AND PETITION

**VINCENT T. PARLATO, ESQ**., declares under 28 U.S.C. § 1746 that:

      1.      I am an attorney admitted to practice and appear in the United States District Court for the Western District of New York. Statements in this Declaration and Petition are made upon information and belief, based upon my review of the file maintained in my office.

      2.      I represent the Petitioner, Frank R. Parlato, Jr., as to this Petition and as to a New York Supreme Court civil action pending in Niagara County before the Honorable Frank Caruso (Niagara County Supreme Court, Index No. E143205/2011).

      3.      I submit this Declaration in support of the Petition[1] to disclose Clare Bronfman's grand jury transcript of testimony taken on or about June 23, 2011 for use in the civil action.

---

[1] Federal Rule of Criminal Procedure 6(e)(3)(F) refers to a "petition," and not a motion. Declarant respectfully requests that the Court deem the Notice of Petition and Petition a Notice of Motion and Motion if it should it determine that the styling of Motion is preferable to Petition in order to be entertained and heard within this existing Docket.

4.    In the pending Niagara County Supreme Court action, the Bronfmans claim they loaned Petitioner $1 million as a demand loan without a written agreement.

5.    However, before the Western District of New York grand jury, Clare Bronfman testified to something quite different.

6.    Clare Bronfman testified before the grand jury that a Letter of Intent (LOI") between her, her sister, Sara Bronfman, and Frank Parlato was actually entered into between them. The terms of the LOI provided for Petitioner's one-third compensation from the net profits of a Los Angeles real estate project that Petitioner would develop and that he would receive a $1 million advance draw to be repaid from his share of the net profits. No conditions concerning the use of $1 million for property taxes (as claimed by the Bronfmans in their civil complaint) are stated in the LOI.

7.    Clare Bronfman's grand jury testimony comprises the only known instance in which the Bronfmans (through Clare Bronfman) have admitted that Petitioner and the Bronfmans agreed that the LOI was entered into between the parties, and that Petitioner would have a percentage interest in the net profits of a multimillion-dollar real property development project in Los Angeles.

8.    I have spoken with Assistant United States Attorney, Charles Kruly, and the Government does not consent to the disclosure and unsealing of this grand jury transcript. I have also advised William F. Savino, Esq., attorney for the Bronfmans, about the intent to file this Petition.

9.    Notwithstanding, on behalf of Petitioner, I respectfully submit that Petitioner has a demonstrated particularized need for this narrowly-tailored request that warrants disclosure, even over the objection of the Government and the possible objection of the Bronfmans. *See* Petitioner's Memorandum of Law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

10.    The Bronfmans filed a summons with notice and verified complaint against Petitioner in 2011 and 2012. *See* **Exhibit A**, Summons with Notice and Verified Complaint.

11.    The Bronfmans allege that in 2007, the Bronfmans engaged Petitioner as a public relations consultant. *Id*. at ¶6.

12.    The Bronfmans allege that prior to and in 2008, the Bronfmans were investors in a real estate construction development project in Los Angeles, California. *Id*. at ¶8-9. They allege that while Petitioner was already engaged by them as a public relations consultant, the Bronfmans "proposed" that Petitioner "undertake additional responsibilities as an agent of the Bronfmans with respect to the Los Angeles Project." *Id*. at ¶¶11-13.

13.    The Bronfmans allege that Petitioner required a $1 million loan "for unpaid real estate taxes" concerning "Niagara One." *See id*. at ¶14. The Bronfmans allege that Petitioner offered to "grant a lien on the One Niagara property in favor of the Bronfmans to secure their $1.0 [sic] loan to him." *Id*. at ¶16.

14.    The Bronfmans allege that they relied on Petitioner's "representations (made while he was already their agent) and without a written agreement," and "loaned Parlato $1.0 million as a demand loan." *Id.* at ¶17.

15.    The Bronfmans allege, *inter alia*, that Petitioner did not use the $1 million for property tax payment and that they would not have "loaned" him money "simply for his personal benefit[.]" *Id.* at ¶¶20-21.

16.    The Bronfmans allege that "concomitantly" with the $1.0 million loan, the Bronfmans expanded Petitioner's "agency and engagement" to also "be their agent to oversee the Los Angeles Project." *Id.* at ¶23.

17.    The Bronfmans allege that Petitioner "was successful in part" in "addressing construction problems in the Los Angeles project" but terminated Petitioner's engagement due to alleged financial improprieties and breach of fiduciary duty. *Id.* at ¶24. The Bronfmans allege that Petitioner refused the Bronfmans' demand to "repay the $1.0 million loan." *Id.* at ¶25.

18.    The Bronfmans' verified complaint includes claims for breach of contract, unjust enrichment, conversion, moneys had and received, fraud, conspiracy to commit fraud, and breach of fiduciary duty causes of action. *See id.* at pp. 5-10.

19.    Petitioner filed a verified answer to the Bronfman's verified complaint. *See* **Exhibit B,** verified answer.

20.    Petitioner's verified answer denies liability and asserts counterclaims including breach of contract in the amount of $7.5 million dollars, and a claim for defense and indemnification from "any claims," including attorney's fees, related to

Petitioner's management of Precision Development LLC and Castle Asset Management, Inc.[2] *Id*. at pp. 3-5.

21.     The verified answer details in the first counterclaim that the Bronfmans "agreed that Defendant Frank Parlato would perform certain services with respect to real estate investment and development in Los Angeles, and that he would be entitled to a percentage of profits for same." *Id*. at p. 3. The verified answer alleges that Petitioner was summarily terminated and "for no valid reason." *Id*.

22.     Thus, while the Bronfmans claim they loaned Petitioner $1 million without a written agreement, and without an agreement to pay Petitioner one third of the net profits of the real estate project, Petitioner counterclaims an agreement existed in which he would have been entitled to one third of the net profits, from which the subject $1 million could have been repaid (had he not been wrongfully terminated).

23.     The scope of the employment agreement is reflected in a LOI signed by Petitioner. *See* **Exhibit C**, LOI.

24.     Under the LOI, the Bronfmans would provide an "advanced draw" to Petitioner in the amount of $1 million to be deducted and repaid from Petitioner's compensation of thirty three and one-third (33 1/3) percent of the net profit of the involved companies. *Id*.

25.     Petitioner seeks to prove in Niagara County Supreme Court that the Bronfmans deprived Petitioner of the opportunity to repay the Bronfmans, and to

---

[2] Entities owned by the Bronfmans and others involved in the construction and development of the Los Angeles real estate project, and its management.

earn his CEO compensation by developing the Los Angeles properties, and that the Bronfmans in doing so breached the contract and wrongfully terminating Petitioner. *See* Exhibits B and C.

26.     The terms of the LOI further provide that it was "made and entered into" January 8, 2008, between the Bronfmans and Petitioner, and additionally provides, in relevant part, that the:

    a.  Bronfmans employ Petitioner's services to act as President and CEO to manage, operate, and control Precision Development LLC and Castle Asset Management, Inc., "which said Companies are in the business of developing single and multi-family housing facilities in the Greater Los Angeles, California area";

    b.  Bronfmans appoint Petitioner as lawful agent and attorney-in-fact with authority to "do any and all lawful things customarily associated with the role of President" and CEO "necessary for the fulfillment of this Agreement and the operations of the Companies and the Companies developments" including rendering accounting of income received and expenses paid out, hiring, terminating employees, developing, operating, leasing, selling properties, among other powers given;

    c.  Bronfmans agree to hold Petitioner harmless and indemnify from claims, charges, debts, demands and lawsuits, including attorney's fees "related to his management of the Companies…"

*See* Exhibit C at p. 1.

27.     Importantly, the LOI provides for Petitioner's compensation:

**Compensation of President and Chief Executive Officer**

[Bronfmans] agree[] to compensate [Petitioner] by payment of **thirty three and one-third percent (33.33%) of the net profits of the Companies** ("net profit" meaning after payment of all expenses and return of members capital contributions and twenty percent (20%) premium due thereon pursuant to Companies operating agreements and amendments thereto) (hereinafter referred to as the "CEO Compensation").

Exhibit C at p. 1.

28.     The LOI then provides terms for the provision of $1 million from the

Bronfmans to Petitioner:

> **Advanced          Draw          Against          CEO
> Compensation/Repayment and Collateral**
>
> As an advance against the CEO Compensation, [Bronfmans]
> shall pay to [Petitioner] the sum of One Million Dollars and
> 00/cents ($1,000,000.00) **upon the execution of this
> Agreement (hereinafter referred to as the "Draw").**
> Said Draw shall be deducted and repaid to [Bronfmans] from
> the CEO Compensation at the time of the payment of all or
> part of the same.
>
> CEO has a controlling interest in real property located at 360
> Rainbow Blvd. South, Niagara Falls, NY (hereinafter "One
> Niagara") which said interest CEO represents and warrants
> has a net value in excess of One Million Dollars
> ($1,000,000.00). To additionally secure the repayment of the
> Draw, CEO agrees that said Draw constitutes a lien on
> [Petitioner's] interest in One Niagara….

Exhibit C at pp. 1-2.

29.     Flatly contradicting Bronfmans' allegations in Niagara County Supreme

Court, nothing in the LOI mentions nor references One Niagara Building property

taxes or a designated and earmarked use for the $1 million. *See id.*

30.     The LOI was once the subject of testimony in the Western District of

New York grand jury.

31.     By way of that background, an indictment was returned in this Court

on November 20, 2015 against Petitioner. *See* Dkt. 1.[3]

---

[3] Docket citations refer to this action, Criminal Docket 1:15-cr-149.

32.     The November 20, 2015 indictment referenced "C.B." and "S.B." (known to be Clare Bronfman and Sara Bronfman) and alleged in relevant part that Petitioner:

> **[E]ntered into an agreement** with C.B. and S.B., persons known to the Grand Jury, under which he was to receive $1,000,000 for services to be provided by the [Petitioner] to C.B. and S.B. On or about January 16, 2008, at the direction of the defendant, C.B. and S.B. wire transferred the $1,000,000 due the defendant under the agreement....

Dkt. 1 at p. 1, ¶2.

33.     The Government alleged in the original indictment that the Bronfmans had an "interest in the One Niagara building[.]" *See* Dkt. 1 at p. 20 ¶2.

34.     Pre-trial motions in this criminal action publicly disclosed (***not under seal***) an excerpt of Clare Bronfman's grand jury testimony.

35.     As demonstrated by filings, publicly available, to this docket, on or about June 23, 2011, Clare Bronfman was shown grand jury exhibit "11A", upon information and belief the LOI, and she testified:

> Q:     And this was <u>at least the **_initial_** agreement</u> between you and your sister and Mr. Parlato?
>
> A:     ***That's correct***.
>
>                 ....
>
> Q:     There is a signature on the last page. It appears to be Mr. Parlato's?
>
> A:     Yes.
>
> Q:     But there are no other signatures on the document?
>
> A:     Correct.
>
> Q:     ***<u>Do you recall the document actually being entered into</u>***?

        A:      **Yes**.

*See* Dkt. 83 at pp. 7-8 (citing Dkt. 54 at pp. 6-7).

36.     Despite the lack of the Bronfmans' signatures, Clare Bronfman thus recalled agreeing to the LOI. *See id.*

37.     Notably, only a few months before this grand jury testimony, cited above, Clare Bronfman testified at a trial in Los Angeles County Superior Court about the LOI and Petitioner's compensation, on March 28, 2011. *See* **Exhibit D**, *Precision Development, LLC v. Yuri Plyam*, Los Angeles Superior Court Index No. BC384285, Clare Bronfman Trial Transcript (bates-marked and referred to by the bates-marked pages in the right footer).

38.     In Los Angeles, Clare Bronfman testified:

> Q:     Now, was your agreement to compensate Mr. Parlato based on providing him 33 and a third percent of the profit of Precision and CAM?
>
> A:     No. That's why I said I don't think we ever signed this agreement.
>
> Q:     So you didn't agree to give him a third of the profit?
>
> A:     From my recollection, no.

*Id.* at p. 32.

39.     Clare Bronfman also testified to a "loan Agreement", (*id.* at p. 24), notwithstanding the pending civil action in Niagara County Supreme Court claims that $1 million was loaned without a written agreement. *See* Exhibit A.

40.    Clare Bronfman's grand jury testimony flatly contradicts this Los Angeles testimony, as well as her claims pending in Niagara County Supreme Court.

41.    Within the span of a mere months in 2011 - between March and June 2011 - Clare Bronfman both testified in Los Angeles that she did not believe that she ever signed the LOI, and then later testified in the grand jury that **she did recall** the LOI "actually being entered into." *Compare* Dkt. 83 at pp. 7-8 *with* Exhibit D).

42.    Now, in Niagara County, Clare Bronfman (and her sister, Sara Bronfman) have reverted to the Los Angeles position (and abandoned the grand jury position), where the Bronfmans allege that the subject $1,000,000 was "loaned" to Petitioner, **without a written agreement**. *See* Exhibit A.

43.    Clare Bronfman also stated in a "Reply Affidavit" sworn to December 7, 2018 that "[r]elying on Parlato's representations (made while he was serving as our agent) **and without a written agreement**, we loaned Parlato $1.0 million as a demand loan." *See* **Exhibit E**, Bronfman Affidavit at ¶9 (emphasis added).

44.    There is a compelling need for disclosure of Clare Bronfman's grand jury transcript.

45.    Clare Bronfman's grand jury testimony contradicts and undermines the Bronfmans' demand-loan claims in their verified complaint. The LOI provides for an advance draw in the amount of $1 million (not a loan), to be repaid from Petitioner's 33 1/3 interest in the net profits of the real estate venture. *See* Exhibit C.

46.    The LOI also provides that Petitioner was entitled to 33 1/3 percent of the net profits of the real estate venture, a position that Clare Bronfman seemed to

advance in the grand jury, but not in the pending Niagara County civil action (nor previously in Los Angeles County). *See* Exhibits A and D.

47.    In determining this application, Clare Bronfman's inconsistent statements and testimony should not be reconciled forgivingly in her favor.

48.    Clare Bronfman is now a federal prisoner, having pled guilty to one count of conspiracy to conceal and harbor aliens for financial gain, in violation of 8 U.S.C. §§1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i), and one count of fraudulent use of identification, in violation of 18 U.S.C. §§ 1028(a)(7), 1028(b)(1)(D), and 1028(c)(3)(A). *See* **Exhibit F** at p. 1, September 30, 2020 Sentencing Memorandum of U.S.D.C. E.D.N.Y. Judge Nicholas Garaufis.

49.    On September 30, 2020, Judge Nicholas Garaufis issued Clare Bronfman's sentencing memorandum, finding, among other things, that Clare Bronfman's crimes of conviction "standing alone" did not fully encompass the larger pattern of misdeeds perpetrated by Ms. Bronfman[,]" *Id*. at p. 5, including:

a. Refusing to honor the terms of a visa applicant's employment agreement, demanded work from the Jane Doe without compensation, emotionally manipulating the woman, and refusing to pay her (*id*. at p. 10);

b. Obtaining another visa for a non-citizen and **not paying the person**, paying another non-citizen a salary and then demanding the woman "pay her back when the work responsibilities she was given were less than fulltime" (*id*. at pp. 10-11);

c. That she "**extracted labor** that [Clare Bronfman] did not pay for" and took advantage of individuals' financial straits and immigration statuses (*id*. at p. 11);

d. Fraudulently using identification (*id*. at 12);

    e.   Giving $100,000,000 to NXIVM and "other Raniere-associated endeavors",[4] repeatedly and consistently leveraging "her wealth and social status as a means of intimidating, controlling and punishing individuals whom Raniere perceived as his adversaries, particularly Nxivm's detractors and critics" (*id*. at p. 13);

    f.   Clare Bronfman's "forceful and aggressive…efforts to use the legal system to silence Nxivm's critics." (*id*. at p. 14);

    g.   Working with Raniere "hand-in-hand to intimidate and silence victims of" sexual abuse and exploitation (*id*. at 19);

50.    From this, one common theme emerges: the Bronfmans' willingness to obtain benefits and services, to extract labor from individuals, and to defraud them.

51.    That theme reemerges in this pending Niagara County Supreme Court civil action.

52.    Petitioner seeks to prove in Niagara County that a Bronfman scheme was perpetuated against him in 2008, after he had rendered valuable services to the Bronfmans.

53.    Indeed, relative to this point, as to the work performed by Petitioner as to the Los Angeles Project, as Clare Bronfman testified in Los Angeles of Petitioner:

> I'm very grateful for what Mr. Parlato did. I think what he did was very helpful for us. He uncovered a very problematic situation. I wasn't here to see what happened, how he did it, what the methods were. But like I said, I'm very glad that he did uncover the situation.

Exhibit D at p. 18.

---

[4] Keith Raniere was the leader of the NXIVM sex cult supported, financially and otherwise, by the Bronfmans. *See* Nicole Hong, *Clare Bronfman, Facing Sentencing, Refuses to Disavow 'Sex Cult' Leader*, Sept. 28, 2020, https://www.nytimes.com/2020/09/28/nyregion/clare-bronfman-keith-raniere-nxivm-sentence.html.

54.    In the Los Angeles civil action, Clare Bronfman would further testify, as extracted in relevant part, here, that:

- Mr. Parlato "helped determine that there was a serious problem with a huge investment that my sister and I had made and he was willing to be the person out here trying to uncover everything that was happening. **So I'm very grateful for that**." (*id*. at p. 4);

- We loaned Mr. Parlato $1 million. "It sounded like a lot of money. It is. Compared to 26.43, it was worth it to us." (*id*.);

- "My sister and I had paid [Mr. Parlato] an hourly rate. I believe it was 30 or $35 an hour."
    o Q:    Are you sure it wasn't $75,000 a month?
    o A:    I don't recall that it was.
    o Q:    It's a big difference, wouldn't you say, between $75,000 a month and $30 to $35 an hour; right?
    o A:    Yes. Depending on how many hours he worked. (*id*. at p. 10);

- "I recall saying that I was very grateful for what Parlato had done and that there was – he was willing to go out to California or be out in California and help us figure out what was going on and that he had discovered what had been going on."
    o Q:    Well, but being grateful is not the same thing as suing him, is it?
    o A:    ..I mean, I could think of a circumstance that you would if it was two separate things…. (*id*. at p. 14);

- "I don't know why [Plyam signed over control of the company and management to Mr. Parlato] he chose to sign the agreement. But Mr. Parlato's job was to come here and secure our assets and determine what had happened and what was happening. And I believe he did that." (id. at p. 34).

55.    In exchange for the Bronfmans' "gratitude," as has been in keeping with their *modus operandi*, they wrongfully terminated Petitioner and demanded a return of $1 million. They followed up by commencing the pending Niagara County lawsuit against him, and Clare Bronfman testified before the grand jury in the Western

District of New York to pursue his indictment to serve her, her sister's, and the NXIVM sex cult's own nefarious ends.

56.     Clare Bronfman's grand jury transcript is needed to defend against the Bronfmans' specious claims and to prosecute Petitioner's counterclaims. *See* Memorandum of Law.

57.     Ordering disclosure of Clare Bronfman's grand jury transcript will not chill, impair, inhibit, nor compromise future grand juries in their deliberations, compromise their security and secrecy, nor will it have any foreseeable adverse effect upon prospective grand jury processes.

58.     Generally, disclosing Clare Bronfman's grand jury transcript would have the salutary effect of warning future grand jury witnesses that their grand jury testimony cannot be inconsistent with their testimony elsewhere.

59.      To this point, Clare Bronfman's circumstances are, as Judge Garaufis noted, "rather unique" (*see* Exhibit F at p. 24 (Judge Garaufis remarking that "I don't know how many other multimillionaires are out there, ready to devote the limitless resources at their disposal to supporting pyramid schemes run by dangerous criminals and stifling the voices of their critics and victims")).

60.     It is respectfully submitted that a compelling and particularized need is demonstrated for the disclosure of Clare Bronfman's grand jury transcript for use in in Niagara County Supreme Court litigation.

61.     Further, Petitioner will commit, should the Court require it as a condition of disclosure, to a protective order concerning the grand jury transcript,

such that it may only be used in the Niagara County Supreme Court litigation. Petitioner would also welcome the Court's in camera review prior to ordering disclosure should the Court consider it prudent to do so beforehand, together with any other conditions the Court should determine are warranted.

62.   For these reasons, Petitioner respectfully requests the Court order disclosure of Clare Bronfman's grand jury transcript to Petitioner's counsel for use in the Niagara County Supreme Court action, together with any such other and further relief as the Court may deem just and proper.

Dated:          February 7, 2024

                                             */s/ Vincent T. Parlato*
                                             Vincent T. Parlato, Esq.